**[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 501.]**

THE STATE OF OHIO, APPELLANT, *v.* WEIDEMAN, APPELLEE.

[Cite as *State v. Weideman*, 2002-Ohio-1484.]

*Criminal law—Where law enforcement officer, acting outside statutory territorial jurisdiction, stops and detains a motorist for an offense committed and observed outside officer's jurisdiction, the seizure of the motorist by the officer is not unreasonable per se under the Fourth Amendment—Officer's statutory violation does not require suppression of all evidence flowing from the stop.*

(Nos. 00-1869 and 00-2126—Submitted October 31, 2001—Decided April 3, 2002.)

CERTIFIED by and APPEAL from the Court of Appeals for Portage County, No. 98-P-0109.

————————————

**SYLLABUS OF THE COURT**

Where a law enforcement officer, acting outside the officer's statutory territorial jurisdiction, stops and detains a motorist for an offense committed and observed outside the officer's jurisdiction, the seizure of the motorist by the officer is not unreasonable *per se* under the Fourth Amendment. Therefore, the officer's statutory violation does not require suppression of all evidence flowing from the stop.

————————————

**MOYER, C.J.**

{¶ 1} The state of Ohio appeals the judgment of the Portage County Court of Appeals that reversed the trial court's denial of defendant's motion to suppress following her conviction for driving while under the influence of alcohol.

{¶ 2} On May 24, 1998, Ravenna Police Officer David S. Rarrick was working the midnight shift. Officer Rarrick left the Ravenna city limits to check on a fellow Ravenna police officer, who had failed to radio his status to the dispatcher. After confirming that the officer was in no distress, Officer Rarrick drove back toward Ravenna.

{¶ 3} While stopped at an intersection approximately half a mile outside Ravenna, Officer Rarrick observed a car coming toward him, traveling "well left of center." As he observed the car, it went off the right side of the road twice and again traveled left of center.

{¶ 4} Officer Rarrick stopped the vehicle and radioed the police dispatcher to request that the Ohio State Highway Patrol or the sheriff's office be sent to the scene because he was making a traffic stop outside his jurisdiction. As Officer Rarrick approached the car, driven by defendant Pamela Weideman, he smelled a strong odor of alcohol and observed that her eyes were bloodshot. Officer Rarrick performed a horizontal gaze nystagmus test and noticed that Weideman's eyes could not smoothly follow a moving object. Based on these indicators, Officer Rarrick had Weideman step out of the car to perform a finger-to-nose sobriety test to ensure that he had enough reason to detain Weideman until the state police arrived. Officer Rarrick then informed Weideman that she was being detained until the state police arrived, and retained possession of her car keys, driver's license, vehicle registration, and insurance card. He did not arrest Weideman.

{¶ 5} Approximately ten to fifteen minutes after Officer Rarrick stopped Weideman, Sergeant Dunbar of the Ohio State Highway Patrol arrived. After speaking to Officer Rarrick, Sergeant Dunbar conducted his own series of field sobriety tests. Sergeant Dunbar concluded that Weideman was under the influence of alcohol and placed her under arrest.

{¶ 6} Weideman was transported to the Ravenna Highway Patrol Post, where she submitted to a breath-alcohol test, which registered 0.239 grams of

alcohol per two hundred ten liters of breath. As a result, Weideman was cited for driving under the influence of alcohol in violation of R.C. 4511.19(A)(1) and driving with a prohibited breath-alcohol content in violation of R.C. 4511.19(A)(3).

{¶ 7} Weideman filed a motion to suppress in which she argued that Officer Rarrick had "no lawful cause" to stop and detain her, and that there was no probable cause to arrest her without a warrant. The trial court overruled Weideman's motion to suppress because, in the words of the trial court, Officer Rarrick had the "right to be in the area of the stop" and "noticed what could be perceived as a hazard."

{¶ 8} The court of appeals reversed and remanded, holding that the trial court erred when it overruled defendant's motion to suppress, because "the observed traffic offense and the stop and detention occurred outside of Officer Rarrick's territorial jurisdiction." R.C. 2935.03(A)(1) governs a police officer's jurisdiction to arrest and states:

"A sheriff, deputy sheriff, marshal, deputy marshal, municipal police officer, township constable, police officer of a township or joint township police district * * * shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision * * * in which the peace officer is appointed, employed, or elected, a law of this state, an ordinance of a municipal corporation, or a resolution of a township."

{¶ 9} The court of appeals reasoned that the extraterritorial stop in this case was unlawful and thus *per se* unreasonable under the Fourth Amendment.

{¶ 10} The court of appeals certified a conflict pursuant to S.Ct. Prac.R. IV, finding that its judgment conflicted with those of the Ninth District in *State v. Filler* (1995), 106 Ohio App.3d 731, 667 N.E.2d 54; the Sixth District in *State v. Tennison* (Apr. 14, 1989), Wood App. No. WD-88-41, unreported, 1989 WL 35534; the Fourth District in *State v. Brown* (Apr. 16, 1999), Pickaway App. No. 98CA27, unreported, 1999 WL 259649; and the Second District in *State v. Hammons* (Aug. 28, 1998), Montgomery App. No. 16931, unreported, 1998 WL 543363.

**{¶ 11}** The case is now before this court upon our determination that a conflict exists (case No. 00-1869) and upon the allowance of a discretionary appeal (case No. 00-2126).

**{¶ 12}** The question certified by the court of appeals is "[w]hether a stop and detention of a motorist by a police officer, who is *beyond* his or her jurisdictional limits, for an offense observed and committed *outside* the officer's jurisdiction automatically constitutes a *per se* unreasonable seizure under the Fourth Amendment, thereby triggering the mandatory application of the exclusionary rule to suppress all evidence flowing from the stop." (Emphasis *sic*.) We apply previous decisions of this court and reverse the judgment of the court of appeals.

**{¶ 13}** We find no precedent in the decisions of this court for the holding of the court of appeals. Rather, this court has consistently considered the totality of the circumstances in determining whether a violation of a statutory standard is unreasonable *per se* thus requiring suppression of evidence.

**{¶ 14}** In *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 234-235, 18 O.O.3d 435, 437, 416 N.E.2d 598, 600, we stated, "The exclusionary rule has been applied by this court to violations of a constitutional nature only," and continued, "It is clear * * * that the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights."

**{¶ 15}** The issue in *Hollen* was similar to that in the case *sub judice*. A police officer violated state law by making an extraterritorial warrantless arrest. A significant difference between the two cases is that in *Hollen* the police officer made the extraterritorial arrest "based on probable cause that a crime was committed within the officer's jurisdiction, and * * * the officer was in hot pursuit of the misdemeanant." *Id*. at syllabus. (R.C. 2935.03 had not yet been amended to authorize extraterritorial arrests after hot pursuit.) Here the probable cause for the

detention of the defendant was created outside the detaining officer's jurisdiction. There was no hot pursuit.

{¶ 16} In *Hollen*, we applied well-settled law, citing *State v. Myers* (1971), 26 Ohio St.2d 190, 196, 55 O.O.2d 447, 450, 271 N.E.2d 245, 249 (exclusionary rule would not be applied to statutory violations falling short of constitutional violations, unless legislation required suppression); see, also, *Hilliard v. Elfrink* (1996), 77 Ohio St.3d 155, 672 N.E.2d 166; *State v. Droste*, 83 Ohio St.3d 36, 697 N.E.2d 620, syllabus ("Absent a violation of a constitutional right, the violation of a statute does not invoke the exclusionary rule").  We are not persuaded that we should change the standard used to decide whether a statutory violation rises to the level of a constitutional violation.

{¶ 17} A balancing analysis has been used by this court in similar cases where there was a violation of state statute.  In *Hollen*, the court considered the totality of the circumstances to determine whether the police officer had sufficient probable cause to make the stop.  It was clear that the police officer in *Hollen* had probable cause to stop and arrest the driver after witnessing the driver's erratic driving.  *Hollen*, 64 Ohio St.2d at 235, 18 O.O.3d at 437, 416 N.E.2d at 600.  The opinion continues, "[W]e find no Fourth Amendment violation, given the probable cause to make the seizure." *Id*.  See, also, *State v. Downs* (1977), 51 Ohio St.2d 47, 63-65, 5 O.O.3d 30, 39-40, 364 N.E.2d 1140, 1150-1151 (sheriff's violation of Crim.R. 41, in not returning a search warrant to the judge, did not rise to the level of a constitutional violation); *State v. Davis* (1978), 56 Ohio St.2d 51, 56, 10 O.O.3d 87, 89-90, 381 N.E.2d 641, 645 (taking of a minor's fingerprints in violation of R.C. 2151.313 does not require the exclusion of fingerprint evidence); *State v. Geraldo* (1981), 68 Ohio St.2d 120, 126-129, 22 O.O.3d 366, 370-372, 429 N.E.2d 141, 146-148 (violation of R.C. 4931.28, prohibiting telephone wiretapping, does not require suppression of evidence); *State v. Griffith* (1996), 74 Ohio St.3d 554, 660 N.E.2d 710 (police violation of defendant's right to counsel under R.C. 2935.20

does not require suppression of evidence of breath-alcohol content); *State v. Droste*, Ohio St.3d at 39-40, 697 N.E.2d at 623 (state liquor control officers' violation of R.C. 5502.61, by making a stop outside their authority, does not trigger exclusionary rule, because defendant's constitutional rights were not violated).

{¶ 18} In all of these cases a law enforcement officer violated a statute. But in each, the violation of a statute did not rise to the level of a constitutional violation. However, the court has used the same basic analysis in at least one other case to determine that the state statutory violation did rise to the level of a constitutional violation. In *State v. Jones* (2000), 88 Ohio St.3d 430, 432, 727 N.E.2d 886, 888, police officers arrested a person for jaywalking and thereby violated R.C. 2935.26(A), which prohibits arrests for minor misdemeanors. The court applied a balancing test and stated that "the government's interests in making a full custodial arrest for a minor misdemeanor offense, absent any R.C. 2935.26 exceptions, are minimal and are outweighed by the serious intrusion upon a person's liberty and privacy that, necessarily, arises out of an arrest." *Id*. at 440, 727 N.E.2d at 894-895. Under this rationale, we concluded that a full custodial arrest for a minor offense was an unreasonable seizure and therefore a constitutional violation. The *Jones* case demonstrates that although we have not adopted a *per se* rule, the violation of a state statute may rise to the level of a constitutional violation.

{¶ 19} In *Jones*, we applied the two-prong test adopted by the United States Supreme Court for determining whether a governmental action violates the reasonableness requirement of the Fourth Amendment. 88 Ohio St.3d at 437, 727 N.E.2d at 892, citing *Wyoming v. Houghton* (1999), 526 U.S. 295, 299, 119 S.Ct. 1297, 1300, 143 L.Ed.2d 408, 414. The first prong is to determine whether the action was regarded as an unlawful seizure when the Fourth Amendment was adopted. We restated the second prong as follows: "If, however, at the time of the Fourth Amendment's ratification there was no clear practice either allowing or

forbidding the type of governmental action at issue, then its reasonableness is judged by weighing the competing interests involved." *Id.*

{¶ 20} The governmental action in the case *sub judice* is a stop and detention. Under the first prong of the Fourth Amendment reasonableness test we must attempt to discern whether, at common law in 1791, police officers, who were outside their statutory jurisdiction, were permitted to stop and detain drivers of vehicles. We know of no such case at common law, and thus conclude that there was no clear practice either allowing or forbidding the government action of stopping such a vehicle. Therefore, because this situation was not contemplated at common law, we move to the second prong of the reasonableness test.

{¶ 21} The second prong balances the interests of the government in making the stop and the rights of the affected driver. The government's interest in promoting public safety by stopping and detaining persons driving erratically outweighs the momentary restriction of the driver's freedom.

{¶ 22} The trial court and the court of appeals concluded that Officer Rarrick had probable cause to stop Weideman. The trial court did not err when it concluded that defendant's manner of operating her motor vehicle gave Officer Rarrick sufficient probable cause to make the stop. After the stop, the strong smell of alcohol, Weideman's bloodshot eyes, and the results of the horizontal gaze nystagmus test all amounted to probable cause for Officer Rarrick to detain Weideman until Sergeant Dunbar arrived at the scene.

{¶ 23} The state's interest in protecting the public from a person who drives an automobile in a manner that endangers other drivers outweighs Weideman's right to drive unhindered. These two factors demonstrate that Officer Rarrick's violation of R.C. 2935.03 does not rise to the level of a constitutional violation. As Officer Rarrick's detention of defendant under the circumstances presented here did not violate the Fourth Amendment, the trial court was not required to suppress evidence obtained as a result of the stop and detention. Where a law enforcement

officer, acting outside the officer's statutory territorial jurisdiction, stops and detains a motorist for an offense committed and observed outside the officer's jurisdiction, the seizure of the motorist by the officer is not unreasonable *per se* under the Fourth Amendment. Therefore, the officer's statutory violation does not require suppression of all evidence flowing from the stop. Accordingly, the trial court did not err when it overruled Weideman's motion to suppress. The judgment of the court of appeals is reversed, and the trial court's judgment is reinstated.

*Judgment reversed.*

DOUGLAS, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

RESNICK, J., concurs in judgment.

COOK, J., concurs in judgment only.

PFEIFER, J., dissents.

_____

**COOK, J., concurring in judgment only.**

{¶ 24} The majority correctly concludes that a law enforcement officer's violation of R.C. 2935.03(A)(1), in and of itself, is not a violation of the Fourth Amendment. And as the majority acknowledges, Officer Rarrick had probable cause to stop Pamela Weideman for drunk driving. We need not go any further to determine that the traffic stop passed constitutional muster. A traffic stop is generally reasonable under the Fourth Amendment where the police have probable cause to believe that the detainee has committed a traffic violation. *Whren v. United States* (1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89, 95; *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus. Thus, the majority's Fourth Amendment balancing analysis is largely, if not entirely, superfluous. See *Whren*, 517 U.S. at 817, 116 S.Ct. at 1776, 135 L.Ed.2d at 100 (subject to "rare exceptions," the result of Fourth Amendment balancing "is not in doubt where the search or seizure is based upon probable cause").

**{¶ 25}** Even if the majority's Fourth Amendment balancing analysis were necessary, I would decline to join the opinion because of its apparent reliance on this court's holding in *State v. Jones* (2000), 88 Ohio St.3d 430, 432, 727 N.E.2d 886, 888. Although some of the legal principles relied upon in *Jones* may retain some vitality, the *ratio decidendi* of the case—that a full custodial arrest for a minor misdemeanor violates the Fourth Amendment—is no longer a correct statement of law in light of recent United States Supreme Court precedent. See *Atwater v. Lago Vista* (2001), 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549. With these observations, I concur in the judgment.

_____

**PFEIFER, J., dissenting.**

**{¶ 26}** Ravenna Police Officer David S. Rarrick did a good thing on May 24, 1998. By stopping Pamela Weideman's vehicle and taking her keys, Officer Rarrick may have saved lives. In this case, it was the most he could do. And that should have been enough.

**{¶ 27}** Officer Rarrick did good police work, but good police work does not always have to lead to a conviction. The fact that Officer Rarrick's stop of Weideman was unlawful is enough to show that it was unreasonable. Because of R.C. 2935.03(A)(1), Officer Rarrick had no authority to stop and detain Weideman. Certainly, being stopped and detained by a governmental agent who has no authority to do so violates the Fourth Amendment prohibition against unreasonable searches and seizures. I would affirm the judgment of the court of appeals.

_____

*Victor V. Vigluicci*, Portage County Prosecuting Attorney, and *Kelli K. Norman*, Assistant Prosecuting Attorney, for appellant.

*Antonios C. Scavdis*, for appellee.

*Betty D. Montgomery*, Attorney General, and *David M. Gormley*, State Solicitor, urging reversal for *amicus curiae* Attorney General of Ohio.

_____