OPINION
This timely appeal arises from a decision of the Belmont County Court finding Richard L. Ruff ("Appellant") guilty of driving under the influence of alcohol (DUI) in violation of R.C. § 4511.19(A)(1) 
(6). For the following reasons, this Court affirms the county court's judgment.
On February 8, 2001, State Trooper Ross Thompson was on what he characterized as "speech detail" at the Belmont County Human Services building located on Hammond Road in St. Clairsville, Ohio. (Tr. p. 10). Trooper Thompson was addressing a group of teenagers on the subject of driving safety when the building's director, Chris Chesnick, interrupted him and requested that Thompson accompany him outside. (Tr. p. 10).
Trooper Thompson followed Chesnick to the building's parking lot where he observed Appellant backing his vehicle out of a parking spot reserved for disabled motorists. Trooper Thompson ran over to the vehicle gesturing at the driver to stop. Appellant's driver's side window was open and when Trooper Thompson reached that side of the vehicle, he immediately noted the odor of alcohol. (Tr. p. 11). Trooper Thompson observed that Appellant slurred his speech and that his movements were clumsy. (Tr. p. 12). An examination of the vehicle's interior revealed several open beer containers.
Before asking Appellant to exit the vehicle so that he could better assess his condition, Trooper Thompson contacted the county sheriff's office and requested assistance. Trooper Thompson did so because he thought the backup would be helpful and because he wanted to obviate any potential jurisdictional issues should Appellant's arrest prove necessary. (Tr. p. 12).
Trooper Thompson then conducted a series of field sobriety tests and, according to the Trooper, Appellant failed all of them. (Tr. p. 13). In the interim, Deputy Sheriff Dan Showalter arrived and observed as Trooper Thompson conducted some of the tests. (Tr. p. 5). Deputy Showalter confirmed that Trooper Thompson properly performed the horizontal gaze nystagmus test and the walk and turn test. When Appellant failed those, Deputy Showalter placed Appellant into custody and, with another county deputy, transported Appellant to the nearest State Highway Patrol Post. (Tr. p. 7). When they arrived, Appellant submitted to a breathalyzer test, which revealed a blood alcohol content (BAC) level of .218%. (Tr. p. 21).
The breathalyzer test was administered by Sergeant Jeffrey Bernard of the Ohio State Highway Patrol, a 29-year veteran of the Patrol who was qualified to conduct such tests. The record further indicates that Appellant was under observation for the requisite 20 minutes before taking the test, and the test was conducted in the presence of Deputy Showalter who confirmed that Appellant failed. (Tr. pp. 7, 20).
Deputy Showalter cited Appellant for a third DUI offense as set forth under R.C. § 4511.19(A)(1). Appellant also received a parking ticket under R.C. § 4511.69, related to his use of a parking space reserved for the disabled.
On June 5, 2001, after a bench trial, the trial court found Appellant guilty of violating R.C. § 4511.19(A)(1) and (6), but concluded that the state had not proven the underlying parking violation. In the same proceeding, the trial court sentenced Appellant to a jail term of one year, suspending all but 90 days, along with two years of supervised probation. The court also imposed a fine of $1,000.00 and suspended Appellant's driving privileges for two years. (Judgment Entry, June 6, 2001). On June 7, 2001, Appellant filed his notice of appeal. The trial court thereafter stayed the execution of Appellant's sentence, but refused to stay the driver's license suspension.
In his sole assignment of error Appellant alleges that,
 "TROOPER THOMPSON OF THE OHIO STATE HIGHWAY PATROL DID NOT HAVE JURISDICTION TO STOP AND DETAIN APPELLANT IN A COUNTY OWNED PRIVATE PARKING LOT AND, THUS, THE STOP WAS UNCONSTITUTIONAL WHICH INVOKES THE EXCLUSIONARY RULE."
At the outset, we note that Appellant has waived this issue on appeal because trial counsel failed to challenge Trooper Thompson's jurisdiction to detain him in any trial court proceeding. Under Crim.R. 12(G), a defendant who fails to raise defenses or objections in the trial court will waive them on appeal. State v. French (1995), 72 Ohio St.3d 446.
Generally, with respect to errors raised for the first time on appeal, "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Borowiak (June 29, 2001), 11th Dist. No. 2000-P-0043; quoting, State v. Childs (1968),14 Ohio St.2d 56, para three of the syllabus.
Even if this Court was to consider Appellant's challenge to Trooper Thompson's jurisdiction, we would affirm the trial court because Trooper Thompson's alleged lack of jurisdiction in this case does not warrant suppression of the evidence seized.
The duties and powers of state highway patrol officers are governed by R.C. § 5503.02. Section (A) of that provision states in part that, "[t]he state highway patrol shall * * * enforce on all roads and highways, notwithstanding section 4513.39 of the Revised Code, the laws relating to the operation and use of vehicles on the highways." This section has been construed to give state highway patrol officers, "authority to arrest for traffic violations occurring on city streets, city avenues, city boulevards, city courts, and any other term utilized to designate a road." State v. Murchison (1991), 72 Ohio App.3d 840, 843
(emphasis added). Highway patrol officers also have police powers on all state-owned property. See, R.C. § 5503.02(A) (para. 4).
R.C. § 4511.01(EE) defines a roadway as, "that portion of a highway improved, designated, or ordinarily used for vehicular travel." Under R.C. § 4511.01(BB), a "street" or "highway" encompasses, "the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel." Parking lots, whether publicly or privately owned, do not appear to fall within that definition.
In fact, parking lots and private driveways are routinely exempted from the rules that govern the operation of motor vehicles on roads, streets and highways. See, e.g., Buell v. Brunner (1983), 10 Ohio App.3d 41
(R.C. § 4511.38, which requires the operator of a vehicle attempting to travel in reverse to exercise vigilance not to injure persons or property does not apply to vehicle operation in a parking area); State v.Root (1937), 132 Ohio St. 229 (a driveway on the grounds of a state mental hospital is not a road or highway for purposes of convicting the driver of vehicular manslaughter); and State v. Benshoff (March 21, 1990), 9th Dist. No. 2495 (R.C. § 4511.22(A), making it an offense to impede or block the normal movement of traffic, does not apply to a vehicle's operation in a parking area).
Since Trooper Thompson detained Appellant while the two were in a parking lot which was not owned by the state, he apparently did not have jurisdiction as provided by R.C. § 5503.02. Nevertheless, while it is possible that Trooper Thompson may have exceeded his statutory authority, his conduct does not necessarily occasion suppression of the evidence consequently seized.
Recently, the Ohio Supreme Court addressed this very issue and concluded that,
"Where a law enforcement officer, acting outside the officer's statutory territorial jurisdiction, stops and detains a motorist for an offense committed and observed outside officer's jurisdiction, the seizure of the motorist by the officer is not unreasonable per se under the Fourth Amendment. Therefore, the officer's statutory violation does not require suppression of all evidence flowing from the stop." Statev. Weideman (2002), 94 Ohio St.3d 501, at syllabus.
In reaching this decision, the Supreme Court reversed an Eleventh District Court of Appeals opinion, the same decision on which Appellant relies in framing this appeal.
In Weideman, the Supreme Court applied a balancing test to determine whether a violation of state law rose to the level of a constitutional violation. The Court observed that the key to such an analysis is whether the officer's conduct was reasonable under the circumstances. Id. at 505. In Weideman, the Court acknowledged that in State v. Jones (2000),88 Ohio St.3d 430, it held that an officer's decision to initiate a full custodial arrest for jaywalking was unreasonable under the circumstances and therefore unconstitutional. Id.
Reluctant to retreat from its reasoning in Jones, the Court left open the possibility that under certain circumstances a violation of state statute could be so egregious that it also violated the constitution. Nevertheless, the Supreme Court concluded that given the facts inWeideman, it was clear that the officer had probable cause to institute the stop, given the erratic manner in which the defendant had operated her motor vehicle. Id. at 506.
In the matter at bar, Trooper Thompson's decision to stop Appellant's vehicle was proper. Trooper Thompson stopped Appellant after receiving information from the county building's director that the director had observed Appellant behaving as if he were extremely intoxicated shortly before Appellant attempted to get behind the wheel of his car. (Tr. p. 10). According to Trooper Thompson, Director Chesnick prevailed upon him, "to stop [Appellant] before he kills someone." (Tr. p. 10). Based on that information, Trooper Thompson approached Appellant's car and directed him to stop so that he could, "have a conversation with him to basically to (inaudible) to see on his well-being." (Tr. p. 14).
At the time, Trooper Thompson conceded that he, himself, did not observe anything erratic about Appellant's driving. (Tr. p. 15). Subsequent investigation, however, revealed that Appellant was intoxicated.
A police officer may stop and investigate unusual behavior, even without probable cause to act, when he has a reasonable suspicion that the individual is engaged in criminal activity. State v. Jordan (April 29, 1999), 8th Dist. No. 73453 at *14; citing, Terry v. Ohio (1968),392 U.S. 1. It has been repeatedly observed, however, that reasonable suspicion necessary for such a stop eludes precise definition. See, e.g., City of Maumee v. Weisner, (1999), 87 Ohio St.3d 295, 299.
Reasonable suspicion involves a consideration of, "the totality of the circumstances." United States v. Cortez (1981), 449 U.S. 411, 417. Under this test, "both the content of information possessed by police and its degree of reliability," are relevant to the court's determination.Alabama v. White (1990), 496 U.S. 325, 330. Trooper Thompson candidly admitted that he stopped Appellant based, not on his own observations, but on those of the building's director, Chris Chesnick.
Where the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion is limited to an examination of the weight and reliability properly accorded that tip. Alabama v. White, supra, at 330. Factors considered in making such a determination include the tipster's veracity, reliability, and basis of knowledge. Illinois v. Gates (1983), 462 U.S. 213, 230.
Informants typically fall into three categories: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant.Weisner, 87 Ohio St.3d 295 at 300. While information from anonymous tipsters may be unreliable and require corroboration, identified citizen informants are considered highly reliable. As the Court pointed out inGates, supra, because, "an unquestionably honest citizen comes forward with a report of criminal activity — which if fabricated would subject him to criminal liability — we have found rigorous scrutiny of the basis of his knowledge unnecessary." Id. at 233-234.
In Weisner, supra, a motorist who claimed to have observed the defendant operating his vehicle erratically reported the incident to police dispatch, providing the make, model, year and license plate of defendant's vehicle in the process. Based on the motorist's report, a police officer stopped defendant's vehicle and, after determining that defendant was intoxicated, charged him with DUI. The defendant moved to suppress, arguing that the stop, based solely on a telephone tip, was improper. The Supreme Court disagreed, holding that a telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability. Id. at para. two of syllabus.
Chris Chesnick was an identified citizen informant. His report to Trooper Thompson was based on his personal observation that Appellant behaved and smelled as if he had consumed a considerable quantity of alcohol. Mr. Chesnick's observations were later confirmed by Trooper Thompson, who noted Appellant's slurred speech and saw empty beer cans strewn about the interior of Appellant's vehicle. In the absence of anything that even remotely compromises the credibility or reliability of Mr. Chesnick's report, this Court must conclude that the stop, and the evidence garnered as a result of the stop, was proper.
Since we must overrule Appellant's assignment of error, this Court hereby affirms the decision of the Belmont County Court.
Vukovich, P.J., and DeGenaro, J., concur.