[¶ 1] This appeal arises out of appellant's conviction in the Mahoning County Court, Area No. 2, on one count of driving under the influence ("DUI"), in violation of R.C. 4511.19(A)(1). Appellant, Nicole Vass, argues that all evidence against her should have been suppressed because the arresting officer did not have a reasonable and articulable suspicion of illegal activity when he approached and questioned her. The evidence shows that Appellant was driving her vehicle without the lights on at night, which is an acceptable reason to stop the driver of the vehicle for further questioning. The conviction and sentence are affirmed.
[¶ 2] In the early morning hours of April 30, 2000, appellant was driving on State Rt. 224 in Boardman, Ohio. Two other young women were also in the car. State Highway Trooper Joel V. Hughes observed appellant driving without her headlights on, weaving within her lane, and playing very loud music from the vehicle. (9/27/00 Tr., p. 5.) Trooper Hughes was standing outside of his vehicle when he observed Appellant's vehicle. He waved to Appellant to pull over, but she did not. (9/27/00 Tr., p. 6.) Trooper Hughes entered his patrol car and followed appellant eastbound on State Rt. 224. Appellant pulled into an Amoco gasoline station. Trooper Hughes entered the Amoco station parking area and approached Appellant as she was leaving her automobile. (9/27/00 Tr., p. 7.) Trooper Hughes recognized appellant as the person he had seen driving the vehicle a few minutes earlier. (9/27/00 Tr., p. 17.) Trooper Hughes noticed an odor of alcohol coming from Appellant and that her eyes were glassy. (9/2700 Tr., p. 7.) Trooper Hughes conducted field sobriety tests, which appellant failed. (9/27/00 Tr., p. 9.) Appellant also submitted to a portable breath test and failed.
[¶ 3] Trooper Hughes placed appellant under arrest for driving under the influence of alcohol ("DUI"), in violation of R.C. 4511.19(A)(1), and for failing to use headlights, in violation of R.C. 4513.03.
[¶ 4] On August 4, 2000, appellant filed a motion to suppress all evidence against her. She argued that Trooper Hughes did not have probable cause to arrest her. The motion was denied by judgment entry issued on October 23, 2000.
[¶ 5] On December 4, 2000, appellant entered a plea of no contest to the DUI charge, and the failure to use headlights charge was dropped. The trial judge sentenced appellant to 180 days in jail with 177 days suspended, 12 months of probation, and a $250 fine.
[¶ 6] On January 2, 2001, appellant filed a timely notice of appeal of the December 4, 2000, Judgment Entry.
[¶ 7] Appellant's sole assignment of error asserts:
 [¶ 8] "THE TRIAL COURT ERRED AS THE MATTER OF LAW IN OVERRULING THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS; SINCE THERE IS INSUFFICIENT EVIDENCE IN THE RECORD TO SUPPORT A FINDING THAT THE OHIO STATE HIGHWAY TROOPER HAD A REASONABLE AND ARTICULABLE SUSPICION THAT THE DEFENDANT/APPELLANT WAS VIOLATING ANY TRAFFIC LAW."
 [¶ 9] Appellant's argument is based on the credibility of Trooper Hughes. She argues that the only possible basis for the stop could have been the headlight violation. She asserts that Trooper Hughes gave contradictory testimony about her headlights. Trooper Hughes testified that he saw the headlights were off when he first noticed appellant's vehicle. He testified that he, "never physically lost sight of the vehicle," as he followed it in his cruiser. (9/27/00 Tr., p. 6.) He testified that the headlights on appellant's vehicle were on when he approached her in the Amoco parking lot. (9/27/00 Tr., p. 18.) Appellant contends that all these statements cannot be true. According to appellant, if Trooper Hughes never lost sight of the vehicle, then the headlights must have been on the entire time because they were on when he caught up with the vehicle. Appellant also points to the testimony of another passenger in the car who believed that the headlights were on at all times.
[¶ 10] Appellee fails to address the specific credibility issue raised by appellant, but does generally argue that a violation of a traffic law, including the failure to have headlights on when required, provides a reasonable basis for a traffic stop. See State v. Dion (Dec. 15, 1992), 3rd Dist. No. 6-92-5.
[¶ 11] The standard of review of a trial court's ruling on a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. State v.Culberson (2001), 142 Ohio App.3d 656, 660, 756 N.E.2d 734; State v.Sharpe (June 30, 2000), 7th Dist. No. 99 CA 510. "In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Venham (1994),96 Ohio App.3d 649, 653, 645 N.E.2d 831. A reviewing court must accept the trial court's factual findings and its assessment of the credibility of witnesses. Culberson, supra, at 660. After accepting those facts as true, the reviewing court must independently determine as a matter of law whether the trial court met the applicable legal standards. State v.Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141.
[¶ 12] The Fourth Amendment prohibits police officers from making unreasonable searches and seizures. The temporary detention of a person during a traffic stop is a "seizure" under the Fourth Amendment. Delawarev. Prouse (1979), 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660. A traffic stop must be reasonable under the circumstances to avoid violating the Fourth Amendment. Id. at 659.
[¶ 13] In making a traffic stop, an officer does not violate the Fourth Amendment if the officer has reasonable suspicion, based on articulable facts, that the person stopped has engaged in, is engaged in, or is about to engage in criminal activity. Terry v. Ohio (1968),392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889. Whether the officer had such reasonable suspicion is reviewed by taking into consideration the totality of the circumstances surrounding the stop. State v. Freeman
(1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus.
[¶ 14] The proper remedy for a Fourth Amendment violation is the suppression of evidence obtained by virtue of the violation. Blanchesterv. Hester (1992), 81 Ohio App.3d 815, 820, 612 N.E.2d 412.
[¶ 15] Appellant's argument on appeal presupposes that Trooper Hughes implemented a traffic stop, and that the traffic stop violated the Fourth Amendment. The evidence reveals that any seizure of appellant's person or vehicle did not occur until after Trooper Hughes approached appellant getting out of her car in the Amoco parking lot. Although Trooper Hughes followed Appellant's vehicle for several blocks, the evidence reveals that the passengers did not know they were being followed. (9/27/00 Tr., pp. 26-27, 34-35.) Appellant did not stop her vehicle in response to anything done by Trooper Hughes, but rather, stopped at the Amoco station to buy cigarettes. (9/27/00 Tr., p. 35.) Trooper Hughes drove into the Amoco station parking area and approached Appellant as she was exiting her vehicle. (9/27/00 Tr., p. 7.) Up to this point, it does not appear that Appellant was even aware of Trooper Hughes' presence.
[¶ 16] In Florida v. Royer (1983), 460 U.S. 491, 103 S.Ct. 1319,75 L.Ed.2d 229, the Supreme Court held that the mere questioning of a person who is not yet in custody does not constitute a "seizure" under the Fourth Amendment:
 [¶ 17] "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.
 [¶ 18] "* * *
 [¶ 19] "The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds." (Citations omitted.) Id. at 497-498.
 [¶ 20] After Trooper Hughes approached appellant, he noticed the smell of alcohol. At this point, Trooper Hughes had reason to continue questioning appellant to determine if field sobriety tests should be administered. State v. Evans (1998), 127 Ohio App.3d 56, 63,711 N.E.2d 761. It does not really matter whether the alleged headlight violation created reasonable suspicion for Trooper Hughes to stop and detain appellant, because she was neither stopped nor detained based on the lack of having properly illuminated headlights. She was detained due to having an odor of alcohol and due to the fact that Trooper Hughes recognized her as the driver of the vehicle.
[¶ 21] Assuming, arguendo, that Trooper Hughes actually did cause appellant to stop her vehicle, it is clear from the record that he had a reasonable and articulable suspicion to make that stop. Trooper Hughes specifically stated that he saw appellant driving the car without her headlights. The events occurred at approximately 2:27 a.m. R.C. 4513.03
requires drivers to have their headlights on from sunset to sunrise. Therefore, Trooper Hughes had reason to believe that Appellant was violating R.C. 4513.03.
[¶ 22] "A traffic stop is generally reasonable under the Fourth Amendment where the police have probable cause to believe that the detainee has committed a traffic violation." State v. Weideman (2002),94 Ohio St.3d 501, 507, 764 N.E.2d 997, citing Whren v. United States
(1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89.
[¶ 23] No one questioned Trooper Hughes as to whether he actually saw appellant turning her lights on after he noticed the lights were not on. Furthermore, Trooper Hughes only testified that he never lost sight of appellant's vehicle, which he was observing as appellant's vehicle drove away. He did not testify that he was able to view the front or headlight area of appellant's vehicle the entire time. If appellant had turned her lights on at the Amoco station, this would not have negated the previous violation of driving without required headlights. See Maumeev. Lewis (Jan 29, 1993), 6th Dist. No. L-92-114.
[¶ 24] Although another passenger in the vehicle, Cheryl Brunswick, testified that appellant did have her headlights on the entire time she was driving, the trial court may not have believed this testimony. The weight and credibility of testimony are for the trier of fact to determine, and a reviewing court gives great deference to these determinations. State v. DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.
[¶ 25] Based on the foregoing analysis, there was no Fourth Amendment violation in this case. The trial court was correct in overruling Appellant's motion to suppress. Appellant's sole assignment of error is overruled, and her conviction and sentence are affirmed.
Judgment affirmed.
Donofrio, J. and Vukovich, P.J., concur.