OPINION
{¶ 1} This is an appeal of the judgment of the Mentor Municipal Court, denying a motion to suppress filed by appellant, Donald W. Pandolfi.
 {¶ 2} On the evening of November 2, 2000, appellant was arrested and charged with driving under the influence of alcohol, seat belt violations, and marked lane violations. Appellant pleaded not guilty to the charges. On January 29, 2001, appellant filed a motion to suppress. A hearing was held on appellant's motion on February 12, 2001 and February 20, 2001.
 {¶ 3} At the suppression hearing, Mike Vaccaro ("Vaccaro"), testified that he called the Mentor Police Department and informed the dispatcher that he was following a car that was driving erratically and that, he believed, was being driven by an intoxicated driver. Vaccaro described the car, and told the dispatcher that the car was heading west on State Route 2, entering Mentor. Vaccaro testified that he continued following the car into Mentor until he saw the Mentor police cruiser begin to pull onto the road behind the car.
 {¶ 4} Officer Jamie Covell ("Officer Covell") of the Mentor Police Department testified that the dispatcher radioed and relayed the information provided by Vaccaro. A short time later, Officer Covell saw the car, described by Vaccaro, approaching. After the car passed, Officer Covell pulled onto the road behind it, and sped up to catch the car. Officer Covell testified that he saw the car drift left of center several times while he was following it.
 {¶ 5} Officer Covell testified that he pulled the car over outside the Mentor city limits, but that he had seen the car driving erratically within the city limits. Officer Covell testified that, as he spoke to appellant, the driver, he noticed a moderate odor of alcohol on appellant's breath. He also noticed that appellant's speech was slightly slurred and his eyes were glassy. Officer Covell also testified that appellant told him that he had consumed a few drinks that evening.
 {¶ 6} Officer Covell asked appellant to exit his vehicle to perform field sobriety tests. Officer Covell testified that appellant failed the tests. Officer Covell then arrested appellant. After appellant was placed under arrest, Officer Covell and another officer, who had arrived on the scene, inventoried appellant's car.
 {¶ 7} At the end of the hearing, the trial court denied appellant's motion to suppress. Following the denial of appellant's motion to suppress, appellant pleaded no contest to the charges of driving under the influence of alcohol.
 {¶ 8} Appellant asserts the following assignments of error:
 {¶ 9} "[1.] [t]he trial court committed prejudicial error by denying Appellant's Motion to Suppress.
 {¶ 10} "[2.] [t]he trial court committed prejudicial error by restricting defense counsel's ability to challenge the arresting officer's actions immediately following Appellant's initial detention and arrest.
 {¶ 11} "[3.] [t]he trial committed [sic] prejudicial error when it made a remark, prior to the conclusion of the evidence, which indicated that Appellant's Motion to Suppress had a predetermined result."
 {¶ 12} In appellant's first assignment of error, he identifies three separate issues relating to the legality of the stop and arrest. In his first issue, appellant argues that, based upon the time that dispatch radioed Officer Covell, the time that Officer Covell reported that he had stopped appellant, and the distance between the spot where Officer Covell was waiting for appellant to pass and the Mentor city limits, Officer Covell could not have developed a reasonable suspicion that appellant was driving under the influence of alcohol within his statutory jurisdiction. Appellant argues that, because extraterritorial stops are per se unreasonable, Officer Covell's stop of appellant violated theFourth Amendment and should have been suppressed.
 {¶ 13} Appellant relies on this court's decision in State v.Weideman (Oct. 6, 2000), 11th Dist. No. 98-P-0109, 2000 Ohio App. LEXIS 4655, for the proposition that extraterritorial stops are per se unreasonable. Our decision in Weideman was recently overruled by the Supreme Court of Ohio, in State v. Weideman (2002), 94 Ohio St.3d 501,2002-Ohio-1484. The Supreme Court held that:
 {¶ 14} "[w]here a law enforcement officer, acting outside the officer's statutory territorial jurisdiction, stops and detains a motorist for an offense committed and observed outside the officer's jurisdiction, the seizure of the motorist by the officer is not unreasonable per se under the Fourth Amendment. Therefore, the officer's statutory violation does not require suppression of all evidence flowing from the stop." (Emphasis sic.) State v. Weideman, (2002)94 Ohio St.3d 501, syllabus.
 {¶ 15} Thus, even if Officer Covell did not see appellant's car until after it had left the City of Mentor, as appellant argues, the court is not required to suppress the evidence flowing from the stop. Appellant's first issue is not well taken.
 {¶ 16} In his second issue, appellant argues that, because the police records show only two minutes between the time Officer Covell received the dispatch about the possible possibly drunk driver and the time Officer Covell stopped appellant, Officer Covell could not have viewed the car for a sufficient amount of time to have formed a reasonable suspicion that appellant was driving under the influence of alcohol.
 {¶ 17} An officer may make an investigative stop of a vehicle if he possesses a reasonable suspicion, based on specific and articulable facts, that criminal behavior has occurred or is about to occur. Terryv. Ohio (1968), 392 U.S. 1, 30.
 {¶ 18} Officer Covell testified that he had received a call from dispatch reporting that an identified citizen informant had reported a possible possibly intoxicated driver. He also testified that dispatch gave him the informant's description of the car and the car's license plate number. Officer Covell testified that he saw the car pass and pulled out to follow it. He testified that, while he was following the car, it drifted over the centerline several times. Officer Covell then activated his overhead lights, and stopped appellant.
 {¶ 19} If the trial court found Officer Covell's testimony credible, these observations alone would have given Officer Covell probable cause to stop appellant for his driving violations and would have given him a reasonable suspicion, based on specific and articulable facts, that appellant was driving under the influence of alcohol. See,e.g., State v. Rivera (Sept. 21, 2001), 11th Dist. No. 2001-A-0005, 2001 WL 1117073, at *4. However, Officer Covell had a reasonable suspicion to believe that appellant was driving under the influence of alcohol even if he did not see appellant drift over the centerline.
 {¶ 20} Even had Officer Covell not witnessed appellant's erratic driving, he had a reasonable suspicion that appellant was driving under the influence of alcohol based upon the information he received from the dispatcher. The Supreme Court of Ohio has held that "where an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." (Emphasis sic.) Maumee v. Weisner (1999), 87 Ohio St.3d 295, 298.
 {¶ 21} In this case, as in Maumee, dispatch received its information from an identified citizen informant. When determining whether a stop, based entirely upon an informant's tip, was made with reasonable suspicion, the court must determine whether the tip itself possessed sufficient indicia of reliability to justify the stop. Id., at 299. Relevant to this determination "are the informant's veracity, reliability, and basis of knowledge." Id.
 {¶ 22} Identified citizen informants are considered to have a high degree of credibility. Id. at 300., Whether an informant is identified is, however, only one element in determining the indicia of reliability of the informant's tip. Id. Other factors include the informant's basis of knowledge and his motivation.
 {¶ 23} In this case, Vaccaro was an identified citizen informant. He gave his name to the dispatcher and remained on the phone with the dispatcher until Officer Covell stopped appellant. These actions show a willingness to permit extended police contact, which indicates greater credibility. See Id., at 302.
 {¶ 24} Vaccaro also spoke to the dispatcher while following appellant's car and gave a firsthand report of appellant's driving as it occurred. "Typically, a personal observation by an informant is due greater reliability than a secondhand description." Id. The description of appellant's driving as it occurred gives Vacarro's tip further credibility as to the events being described, as the tip did not rely on the witness' memory. See Id.
 {¶ 25} Furthermore, Vaccaro made his report from the perspective of a concerned citizen sharing the road with appellant, who was driving erratically. This lends greater reliability to Vacarro's tip, because it shows that he was motivated by a desire to eliminate a risk to the public safety. Id., at 303.
 {¶ 26} When viewed in their entirety, these factors indicate that Vacarro's tip was trustworthy and reliable. Thus, Vacarro's tip was sufficient to justify a reasonable suspicion of criminal activity. Even if Officer Covell had not witnessed appellant driving erratically, he had a reasonable suspicion, on the basis of Vacarro's tip alone, to stop appellant. Appellant's second issue is not well taken.
 {¶ 27} In appellant's third issue, he argues that Officer Covell did not have probable cause to arrest appellant for driving under the influence of alcohol. Appellant's argument is predicated on the fact that Officer Covell stopped his car at 11:40 p.m. and a tow truck was called to the scene at 11:44 p.m. Appellant argues that this shows that Officer Covell was engaged in a "rush to judgment," and that he arrested appellant without probable cause.
 {¶ 28} At the suppression hearing, Officer Covell testified that he stopped appellant on the basis of Vaccaro's tip and because he saw appellant drift over the centerline several times. Officer Covell also testified that he noticed a moderate smell of alcohol on appellant's breath, appellant's eyes were glassy, and he slurred his speech slightly. Officer Covell further testified that he asked appellant if he had been drinking, and appellant answered that he had a couple of drinks.
 {¶ 29} Officer Covell testified that he asked appellant to get out of the car to perform the field sobriety tests. When appellant exited the vehicle, he used the car door for support, and staggered while walking to the area where the tests were to be performed. Officer Covell further testified that he then had appellant perform the field sobriety tests. Appellant failed all of the field sobriety tests, and Officer Covell placed him under arrest.
 {¶ 30} Officer Covell testified that: these tests took between five and ten minutes to complete; once appellant was in custody, ten to fifteen minutes after the stop, a tow truck was called; but, he did not remember whether or not he called for the call was made by the officers at the scene or by the police dispatcher.
 {¶ 31} John Johns ("Johns,") a passenger in appellant's car, at the time of the stop, testified that, after Officer Covell approached the car, he asked appellant to exit the vehicle to perform some tests. He testified that appellant and Officer Covell went behind the car and that he saw some movements, but could not be sure what was going on because the police cruiser's headlights were in his eyes. Johns testified that he was present at the time the tow truck was called and that ten to fifteen minutes elapsed between the time the car was stopped and the time the tow truck was called.
 {¶ 32} These facts, taken in their entirety, provided Officer Covell with probable cause to arrest appellant for driving under the influence of alcohol. Appellant argues that the four minute period, between the time appellant was stopped and the time the records reflect that the two truck was called, was insufficient for Officer Covell to develop probable cause. Both Officer Covell and Johns, however, testified that the time between the stop and the call for the tow truck was longer than four minutes. It was not unreasonable, based upon the competent, credible evidence of both parties' witnesses, for the court to determine that Officer Covell had sufficient time to develop the necessary probable cause to arrest appellant.
 {¶ 33} At oral argument, appellant argued that Officer Covell was predisposed to stop appellant because he had stopped appellant for DUI on a prior occasion. Officer Covell's motives for stopping appellant, however, are not relevant because, "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Dayton v. Erickson
(1996), 76 Ohio St.3d 3, syllabus; following United States v. Ferguson
(C.A.6, 1993), 8 F.3d 385. As discussed above, Officer Covell saw appellant's car drift over the centerline of the freeway, which gave him probable cause to believe that a traffic violation had occurred. Thus, Officer Covell's alleged ulterior motives for stopping appellant do not make the stop unreasonable. Appellant's third issue is not well taken.
 {¶ 34} Appellant's first assignment of error is without merit.
 {¶ 35} In his second assignment of error, appellant argues that the trial court erred by refusing to allow appellant to present evidence of statements made by Officer Covell, after appellant was arrested, which were transmitted by a cellular phone. Appellant attempted to present the testimony of Helen Karbon ("Karbon") that she was speaking to appellant on the phone when he was stopped and heard conversation between Officer Covell and another officer, after appellant was under arrest and the officers were performing an inventory of appellant's car. Karbon testified that her answering machine was on when she received the phone call. After the trial court excluded these statements, appellant made an offer of proof that Karbon would have testified that she heard Officer Covell say, "[he] cuffed that SOB, that son-of-a-bitch real good." Karbon would also have testified that she heard Officer Covell use "unsavory language." Appellant argues in his brief that Karbon would testify that she heard Officer Covell make disparaging remarks about the judge, but appellant failed to make an offer of proof regarding these statements. Appellant argues that these statements were necessary to challenge Officer Covell's actions after he arrested appellant, and to help him establish a "rush to judgment" theory of defense.
 {¶ 36} Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. The statements that Karbon claims to have heard were heard after appellant had already been arrested. The statements about cuffing appellant "real good," and unsavory language, made after the officer had arrested appellant, were irrelevant to the issue of whether the officer had probable cause to make the arrest. Certainly, disparaging remarks about the judge have no bearing whatsoever on the question of whether Officer Covell had probable cause to arrest appellant. The trial court did not err in concluding that evidence of the statements heard by Karbon were irrelevant to the issues in the suppression hearing.
 {¶ 37} Appellant also claims that Karbon's statements were necessary to impeach Officer Covell's testimony. Officer Covell, when asked whether he had made a statement that he had "got the handcuffs on that son-of-a-bitch real good," testified that he had never made such a statement. Further, when asked whether he and the other officer had a discussion during the auto inventory about what took place at roll call that evening, Officer Covell testified that he did not remember discussing roll call that night. Appellant argues that Karbon's testimony about what she heard would contradict Officer Covell's testimony and that the statements should have been admitted to impeach Officer Covell's credibility.
 {¶ 38} A trial court has "broad discretion concerning the admissibility of evidence presented in a suppression hearing." State v.Woodring (1989), 63 Ohio App.3d 79, 81. While we are aware that the rules of evidence do not apply with full force at hearings on motions to suppress, we believe that they can be instructive in determining whether the trial court abused its discretion by admitting or excluding evidence. See Woodring, supra.
 {¶ 39} In this case, if appellant offered Karbon's testimony of statements by Officer Covell as proof that he handcuffed appellant "real good," or that he made disparaging remarks about the judge, such statements are hearsay without an exception under Evid.R. 803 that would make them admissible
 {¶ 40} If, as appellant claimed in the trial court, the statements heard by Karbon would have been introduced as extrinsic evidence in specific contradiction of Officer Covell's testimony that he had not made such statements, they would still have been inadmissible. Under Evid.R. 616(C), extrinsic evidence is not admissible for the sole purpose of impeaching the testimony of a witness unless the evidence is expressly permitted by the rules of evidence or was permitted by the common law and is not in conflict with the rules of evidence. This use of extrinsic evidence is not permitted by the rules of evidence. Further, the common law would prohibit the introduction of this extrinsic evidence under the collateral matters rule. See State v. Kehn (1977), 50 Ohio St.2d 11, 17. We conclude that the trial court did not abuse its discretion by refusing to admit Karbon's testimony as to statements made by Officer Covell.
 {¶ 41} At oral argument, appellant argued that the trial court had not permitted him to make a complete proffer of Karbon's testimony. He also suggested that he was not permitted to proffer an audiotape of Officer Covell's words, made by Karbon's answering machine, was not a part of the proffer.
 {¶ 42} A review of the record, however, reveals that appellant was permitted to proffer his evidence. Appellant's proffer was interrupted on several occasions by the trial court questioning the validity of appellant's evidence, but the court never foreclosed appellant's opportunity to proffer evidence. During appellant's proffer, no mention was made of an audiotape. Indeed, Appellant never attempted to have the witness authenticate an audiotape and never offered a tape into evidence. Indeed, there is no real evidence from which to conclude that such a tape existed. Thus, the issue of whether the court should have allowed an audiotape into evidence was waived by appellant and cannot now be raised on appeal.
 {¶ 43} Appellant's second assignment of error is without merit.
 {¶ 44} In his third assignment of error, appellant argues that the trial court erred by making a comment which indicated that the outcome of the hearing on the motion to suppress was predetermined.
 {¶ 45} At the end of the second day of the suppression hearing, after appellant presented his final witness and after appellant's exhibits were admitted into evidence, the following exchange occurred between appellant's counsel and the court:
 {¶ 46} "THE COURT: *** Any further witnesses?
 {¶ 47} "[APPELLANT'S COUNSEL]: No. It wouldn't make any difference.
 {¶ 48} "THE COURT: That's true."
 {¶ 49} While we agree with appellant that this comment was ill considered and inappropriate, we do not agree that it requires reversal of the trial court's judgment in this case. It is clear that the comment was not made before the close of evidence, as appellant claims, but was made after appellant had offered all of his evidence to the court. Thus, while it was error for the trial court to have made such a statement, the court's statement does not show bias or prejudice sufficient to have denied appellant a fair hearing.
 {¶ 50} Appellant cites our opinion in State v. Bayer (1995),102 Ohio App.3d 172, where we reversed a judgment of a trial judge based upon comments made by the judge which expressed bias against the defendant, Bayer. In that case, however, the judge: refused to permit Bayer to impeach a witness because the judge had been a friend of that witness for twenty years; forced Bayer to answer questions from the bench while acting as his own attorney, essentially stripping him of his right against self-incrimination; and, told Bayer from the bench, "[y]ou were going to be convicted no matter what * * *." Bayer, at 182. The judge's words in the case sub judice were far from the extreme conduct present inBayer. Appellant's third assignment of error is without merit.
 {¶ 51} For the foregoing reasons, the judgment of the Mentor Municipal Court is hereby affirmed.
Judgment affirmed.
WILLIAM M. O'NEILL and , J., JUDITH A. CHRISTLEY, JJ., concur.