OPINION
{¶ 1} Appellant Tina Underwood appeals her conviction of driving under the influence in the New Philadelphia Municipal Court.
 {¶ 2} Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} On or about July 2, 2002, the Dover Police Department received a call from Charlene Adams advising them that she believed her husband and a couple of his friends, whom she stated were intoxicated, were en route to her place of employment, Greer Steel. She claimed to be concerned for her safety.
 {¶ 4} Ms. Adams gave the police a description of the vehicle: a maroon Oldsmobile, license plate number BFZ 5352.
 {¶ 5} The original dispatch went to the Sheriff's Department, but through a mutual aid policy said call was handled by the Dover Police. Said dispatch was received by the Dover Police at approximately 11:00 P.M.
 {¶ 6} Said information was relayed to an Officer Pierce of the New Philadelphia Police Department by a Dover Officer. Officer Pierce located the suspect vehicle in the City of New Philadelphia and followed same through the City of New Philadelphia and into the City of Dover. While following said vehicle, Officer Pierce observed the vehicle make a wide right turn onto Boat Street in Dover. Officer Pierce radioed this information to all units, and continued to follow said vehicle.
 {¶ 7} Officer Lautenschleger of the Dover Police Department received said information over his radio, located the vehicle, and followed same into the parking lot of Greer Steel, which is located in Tuscarawas County, outside of the Dover city limits, where the driver of the vehicle pulled into a parking space and stopped.
 {¶ 8} Officer Lautenschleger pulled in behind the vehicle, approached same and proceeded to question the occupants regarding alcohol consumption.
 {¶ 9} The driver, Appellant Tina Underwood, was ultimately arrested for driving under the influence of alcohol and also charged with driving left of center.
 {¶ 10} On July 2, 2002, Appellant was arraigned and entered a plea of not guilty to the charges.
 {¶ 11} On August 27, 2002, Appellant moved the court for suppression of all evidence obtained as a result of the alleged illegal detention.
 {¶ 12} On October 9, 2002, the trial court conducted a hearing on appellant's Motion to Suppress.
 {¶ 13} On November 6, 2002, the trial court denied Appellant's motion to suppress.
 {¶ 14} On February 14, 2003, Appellant entered a plea of no contest to the charges and was sentenced.
 {¶ 15} Appellant now appeals, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 16} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN OVERRULING THE MOTION TO SUPPRESS WHERE THERE WAS NO REASONABLE SUSPICION WITH SPECIFIC AND ARTICULABLE FACTS OF CRIMINAL ACTIVITY.
 {¶ 17} "II. THERE WAS NO REASONABLE SUSPICION WITH SPECIFIC ARTICULABLE FACTS OF CRIMINAL ACTIVITY WHEN THE DOVER POLICE OFFICER BEGAN HIS PURSUIT OF THE APPELLANT AFTER HE WAS OUTSIDE HIS TERRITORIAL JURISDICTION."
 I., II. {¶ 18} In each of her assignments of error, Appellant argues that the trial court erred in overruling her motion to suppress based on a lack of reasonable suspicion. We disagree.
 {¶ 19} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning
(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 485; Statev. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor
(1993), 85 Ohio App.3d 623.
 {¶ 20} In the matter presently before us, we find appellant challenges the trial court's decision concerning the ultimate issue raised in her motion to suppress. Thus, in analyzing appellant's Assignments of Error, we must independently determine whether the facts meet the appropriate legal standard.
 {¶ 21} To determine whether the trial court erred in denying appellant's motion to suppress, we must first determine whether the extraterritorial arrest was illegal, and, thus, a violation of appellant's Fourth Amendment right to be free from unreasonable search and seizure.
 {¶ 22} R.C. 2935.03(A)(1) governs a police officer's jurisdiction to arrest and states:
 {¶ 23} "A sheriff, deputy sheriff, marshal, deputy marshal, municipal police officer, township constable, police officer of a township or joint township police district * * * shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision * * * in which the peace officer is appointed, employed, or elected, a law of this state, an ordinance of a municipal corporation, or a resolution of a township."
 {¶ 24} When determining whether an extraterritorial stop triggers the exclusionary rule, a court must determine, under the totality of the circumstances, whether the statutory violation rises to the level of a constitutional violation, i.e., whether the police officer had reasonable suspicion to stop and sufficient probable cause to arrest appellant.State v. Weideman, 94 Ohio St.3d 501, 764 N.E.2d 997, 2002-Ohio-1484.
 {¶ 25} If the totality of the facts and circumstances demonstrate that police had a reasonable, articulable suspicion of criminal conduct sufficient to warrant the investigative stop and detention, and probable cause to arrest, then while that extraterritorial seizure may violate R.C. 2935.03, it does not rise to the level of a constitutional violation requiring suppression of all evidence derived from the stop. Id.
 {¶ 26} In Weideman, supra, the Supreme Court of Ohio held:
 {¶ 27} "Where a law enforcement officer, acting outside the officer's statutory territorial jurisdiction, stops and detains a motorist for an offense committed and observed outside the officer's jurisdiction, the seizure of the motorist by the officer is not unreasonable per se under the Fourth Amendment. Therefore, the officer's statutory violation does not require suppression of all evidence flowing from the stop." (Emphasis sic.) Id. at syllabus.
 {¶ 28} The facts in Weideman involved an officer who observed a vehicle traveling left of center, leave the road twice, and again travel left of center. The officer, a Ravenna Police Officer, was a half mile out of his jurisdiction when he made these observations. The Ravenna officer stopped the vehicle and requested assistance from the Ohio State Highway Patrol because he was outside his jurisdiction. The Ravenna officer then observed that the driver of the vehicle had bloodshot eyes and smelled of alcohol. The driver, Weideman, was subsequently arrested by a Highway Patrol officer for driving while under the influence of alcohol.
 {¶ 29} Weideman filed a motion to suppress, arguing that the Ravenna officer conducted an illegal stop because he was outside his jurisdiction. Citing R.C. 2935.03(A)(1), the Ohio Supreme Court noted that the Ravenna officer had violated a state statute in stopping Weideman's vehicle outside of his jurisdiction. However, employing the balancing test of Wyoming v. Houghton (1999), 526 U.S. 295,119 S.Ct. 1297, 143 L.Ed.2d 408, to determine whether a governmental action violates the reasonableness requirement of the Fourth Amendment, the Supreme Court concluded that "[t]he state's interest in protecting the public from a person who drives an automobile in a manner that endangers other drivers outweighs Weideman's right to drive unhindered. These two factors demonstrate that [the officer's] violation of R.C. 2935.03 does not rise to the level of a constitutional violation." Id. at 506,764 N.E.2d 997.
 {¶ 30} The case sub judice is somewhat analogous in that it involves an officer's observation of an offense committed outside his jurisdiction which is then relayed to another officer who then effects an extraterritorial detention and arrest based on the information or tip presented to him that an offense had been committed in that officer's jurisdiction.
 {¶ 31} "Where, as here, the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip." City of Maumee v. Weisner (1999),87 Ohio St.3d 295, 299, 720 N.E.2d 507. A court's determination as to whether the facts justified a reasonable suspicion will be limited to an examination of the weight and reliability due that tip. Id. Further, when determining the reliability of the tip, the court should consider the informant's veracity, reliability, and the basis of his or her knowledge. Id. In its assessment of these factors, the court should categorize the informant based on the following three classes of informants: "the anonymous informant, the known informant, (someone from the criminal world, who has provided previous reliable tips), and the identified citizen informant." Id. at 300.
 {¶ 32} Here, the "tip" or information relied upon by the Dover police officer was the dispatch from the New Philadelphia police officer who saw Appellant make the wide turn.
 {¶ 33} A police officer need not always have knowledge of the specific facts justifying a stop and may rely upon a dispatch. Maumee,
supra at 297. This principle is rooted in the notion that effective law enforcement cannot be conducted unless officers can act on information transmitted by one officer to another, and that officers, who must often act quickly, cannot be expected to cross-examine their fellow officers about the foundation of the transmitted information. Id.
 {¶ 34} For the above reasons, we conclude that, based on the facts presented for our review, the informant's tip gave rise to a reasonable suspicion sufficient to justify the detention of Appellant. Upon approaching the vehicle, Officer Lautenschleger detected an odor of alcohol coming from appellant. This gave him a reasonable suspicion of criminal activity to justify further detention for investigation and ultimately arrest.
 {¶ 35} As stated in Weideman, supra, "the government's interest in promoting public safety by stopping and detaining persons driving erratically outweighs the momentary restriction of the driver's freedom."
 {¶ 36} Appellant's first and second assignments of error are overruled.
 {¶ 37} The decision of the New Philadelphia Municipal Court is affirmed.
Gwin, P.J. and Wise, J. concur.