OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court and the parties' briefs. Appellant Denzil Ice appeals the decision of the Belmont County Court of Common Pleas convicting him of one count of Breaking and Entering, in violation of R.C. 2911.13 (A) and one count of Vandalism in violation of R.C. 2909.05 (B)(1)(a), both fifth degree felonies. With this appeal, Ice challenges the admission of photographic evidence and the sufficiency of the evidence supporting his vandalism conviction.
 {¶ 2} First, Ice did not object to the introduction of the photographic evidence waiving all but plain error. Because the photos were adequately authenticated by witness testimony it was not error for the trial court to admit them into evidence.
 {¶ 3} Second, after viewing the evidence in a light most favorable to the prosecution, albeit circumstantial, we find that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Because both claims are meritless, we affirm the decision of the trial court.
 Facts {¶ 4} On October 28, 2003, Ice visited the home of Brenda Toka, a woman who lived with an employee of SuperAmerica, a gas station/convenience store. Ice questioned Toka about the security system at SuperAmerica and whether or not it had a back door. He told her that he needed this information because he was going to break in to the SuperAmerica. He then offered to give the couple 25 percent of whatever he got if they would help him. They told him "no" and contacted the assistant manager of the SuperAmerica, Laura Bredan, who in turn contacted the police. Bredan then downloaded a picture of Ice from the internet so she would have it available.
 {¶ 5} On November 3, 2003, at approximately 2:16 A.M., Ice broke into the SuperAmerica. After smashing the plate glass in the front door, Ice entered the store and took Marlboro cigarettes and a 40-ounce bottle of Cobra beer.
 {¶ 6} The store was equipped with a video surveillance system that captured the events that morning. From the surveillance video, Ice was seen entering the store wearing a hooded jacket, blue jeans and socks on his hands. Ice went from the front of the store towards the back counter area. However, the camera did not provide a constant camera angle. Instead the surveillance video system rotated between several fixed camera positions. Accordingly, several black and white still pictures were made from the video to be introduced at trial. It was from this same video that the Bellaire Police Department made their identifications of Ice.
 {¶ 7} Based upon the video, the police obtained a search warrant to search Ice's residence. Around 8:00 A.M. that same morning, the police executed the warrant and found Ice, along with a carton of Marlboro cigarettes and an empty bottle of Cobra beer. Ice was arrested and subsequently indicted by a grand jury. Ice was brought to trial and convicted on both counts.
 Admission of Photographic Evidence {¶ 8} As his first of two assignments of error, Ice claims:
 {¶ 9} "The trial court erred in admitting state's exhibits 2-6 as the state failed to establish a proper foundation, in violation of Rule 901 of the Ohio Rules of Evidence."
 {¶ 10} Ice claims that the trial court abused its discretion by admitting still photographs into evidence at trial because the photos were made from "an unidentified video surveillance system and without a chain of evidence."
 {¶ 11} There are several problems with Ice's argument. First, Ice did not object to the introduction of the photos at trial. It is well established that failure to object to the introduction of certain evidence waives all but plain error. State v. Loza (1994),71 Ohio St.3d 61, 75. The doctrine of plain error is limited to exceptionally rare cases in which the error, left unobjected to at the trial court, "rises to the level of challenging the legitimacy of the underlying judicial process itself." See Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 122. In other words, the plain error rule should not be invoked unless, but for the error, the outcome of the trial would clearly have been otherwise. State v. Cooperrider (1983), 4 Ohio St.3d 226,227. We must now decide if it was in fact error to admit the still photos into evidence.
 {¶ 12} Ice claims it was improper because the chain of custody of the photographs was not established at trial. The chain of custody is part of the authentication and identification mandate set forth in Evid.R. 901 for the admission of evidence. State v. Brown (1995),107 Ohio App.3d 194, 200. Although the prosecution bears the burden of establishing a proper chain of custody, that duty is not absolute.State v. Moore (1973), 47 Ohio App.2d 181, 183, 353 N.E.2d 866. The State need not negate all possibilities of tampering or substitution; instead, the State need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur. Id.; Brown,107 Ohio App.3d at 200, 668 N.E.2d 514. Any breaks in the chain of custody go to the weight afforded to the evidence, not to its admissibility. Accordingly, it was not plain error to admit the photos.
 {¶ 13} Next, Ice claims the photos were not properly authenticated pursuant to Evid. R. 901 which states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
 {¶ 14} The requirement of authentication is satisfied when a proponent presents foundational evidence or testimony from which a rational jury may determine that the evidence is what its proponent claims it to be.Andrews v. Riser Foods, Inc. (Oct. 16, 1997), 8th Dist. No. 71658; Hallv. Johnson (1993), 90 Ohio App.3d 451; and State v. Isley (June 26, 1996), 9th Dist. No. 17485. "The proponent need not offer conclusive evidence as a foundation but must merely offer sufficient evidence to allow the question as to authenticity or genuineness to reach the jury." Id. Additionally, in the case of photographs, it is not necessary to show who took the photograph or when it was taken provided there is testimony that the photograph is a fair and accurate representation of what it represents. Andrews, citing State v. Brooks (1995), 101 Ohio App.3d 260,264.
 {¶ 15} Ice acknowledges that this is the law; but claims that the State needed to further prove or introduce into evidence the system or process that produced the still photos pursuant to Evid.R. 901 (B)(9). That portion of the rule states:
 {¶ 16} "(B) Illustrations
 {¶ 17} "By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
 {¶ 18} * *
 {¶ 19} "(9) Process or system. Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result."
 {¶ 20} It appears Ice may be confusing this argument with the "silent witness" theory. In Midland Steel Products Co. v. Internatl. Union,United Auto., Aerospace Agricultural Implement Workers of Am., Local486 (1991), 61 Ohio St.3d 121, 130, the Ohio Supreme Court found that videotape evidence of a labor strike could be authenticated by the "silent witness" theory. The "silent witness" theory is applicable when the photographic evidence speaks for itself and is substantive evidence of what it portrays. Id. "Under the silent witness theory, photographic evidence may be admitted upon a sufficient showing of the reliability of the process or system that produced the evidence." Id. Expert witness testimony, however, is not required to demonstrate reliability.
 {¶ 21} This requirement was clearly met by the prosecution when the officer testified that the photos were accurate representations of what he viewed on the surveillance tape taken at the time of the break in. Additionally, the store manager, Mark Ellsworth, who produced the still photos from the videotape testified that they were the original copies. Ellsworth further testified that he could recognize different parts of the store in the photos which would indicate that the method of recording the images was reliable per Midland.
 {¶ 22} Since Ellsworth testified the videotape adequately demonstrated what the inside of the store looked like and then testified that the pictures adequately represented the frames he viewed on the videotape, the photos were adequately authenticated. Thus, the admission of the photographs was not plain error. This assignment of error is without merit.
 Sufficiency of the Evidence. {¶ 23} As his second and final assignment of error, Ice claims:
 {¶ 24} "The State failed to prove the damages to property exceeded five hundred dollar (sic) beyond a reasonable doubt."
 {¶ 25} Ice challenges the sufficiency of the evidence supporting his conviction. As the Ohio Supreme Court has stated, arguments concerning the "sufficiency of the evidence" should not be confused with those addressing the "manifest weight of the evidence". See State v. Thompkins
(1997), 78 Ohio St.3d 380, at paragraph two of the syllabus. "Sufficiency of the evidence" is "`a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" Id. at 386, quoting Black's Law Dictionary (6 Ed .1990) 1433.
 {¶ 26} The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. at 273. Whether the evidence is legally sufficient is a question of law. Thompkins at 386.
 {¶ 27} In this case, Ice was charged with vandalism, in violation of R.C. 2909.05(B)(1)(a) which states:
 {¶ 28} "(B)(1) No person shall knowingly cause physical harm to property that is owned or possessed by another, when either of the following applies:
 {¶ 29} "(a) The property is used by its owner or possessor in the owner's or possessor's profession, business, trade, or occupation, and the value of the property or the amount of physical harm involved is five hundred dollars or more;"
 {¶ 30} Ice claims that the State failed to prove beyond a reasonable doubt that he caused in excess of five hundred dollars damage to the store. Ice cites the following testimony from the store manger as proof that the State failed to meet its burden:
 {¶ 31} "Q: Mr. Ellsworth, I've handed you what's marked as State's Exhibit 7 and 8. Eight is a two-page document. Could you tell the court what that is?
 {¶ 32} "A: Yes, Exhibit No. 7 is the actual copy of the invoice from the glass company coming out to repair the glass in the door and —
 {¶ 33} "Q: And how much is that for?
 {¶ 34} "A: That's for $484.88.
 {¶ 35} "Q: All right.
 {¶ 36} "A: And then the other two attachments here are copies of the work ordered from our maintenance department. The maintenance tech that came out to — that had to repair two other doors where the suspect attempted to break into those doors and was unable to and bend the doors up. And the other attachment here is where the maintenance tech here had to do some final adjustments on the door, itself, because it was sticking and so forth, and had to continue repairs on the door.
 {¶ 37} "Q: And what is the total of those?
 {¶ 38} "A: Okay, the one invoice is for 212.25 and the other one was for $84.84.
 {¶ 39} "Q: So the damage to your store was in excess of $500?
 {¶ 40} "A: Yes it was."
 {¶ 41} Although it appears clear that the State has proven its case, Ice nonetheless argues that this court should vacate his conviction because Ellsworth's testimony regarding the second two doors was merely speculative and there was no direct proof that Ice was responsible for the damage. More specifically, Ice claims that there was no testimony offered as to the condition of the two doors prior to the break in.
 {¶ 42} What Ice fails to recognize, however, is that the elements of an offense may be established by direct evidence, circumstantial evidence or both. See State v. Durr (1991), 58 Ohio St.3d 86. Circumstantial and direct evidence are of equal probative value. See Jenks at 272. ("Circumstantial evidence and direct evidence inherently possess the same probative value [and] in some instances certain facts can only be established by circumstantial evidence.") When reviewing the value of circumstantial evidence, it should be noted that, "The weight accorded an inference is fact-dependent and can be disregarded as speculative only if reasonable minds can come to the conclusion that the inference is not supported by the evidence." Wesley v. The McAlpin Co. (May 25, 1994), 1st Dist. No. C-930286, citing Donaldson v. Northern Trading Co. (1992),82 Ohio App.3d 476, 483. See, also, State v. Coe (2003),153 Ohio App.3d 44, 2003-Ohio-2732.
 {¶ 43} Given the circumstances of the case, it was reasonable for the jury to infer that when Ellsworth arrived after the break in and made a list of damage done to the store, that this damage was caused by the person responsible for the break in. This second assignment of error is also meritless.
 {¶ 44} As the trial court properly admitted the photographic evidence and Ice's conviction is supported by sufficient evidence, the judgment of the trial court is affirmed. Donofrio, P.J., concurs.
Waite, J., concurs.