{¶ 150} I concur fully with the majority opinion and analysis regarding all four assignments of error. I would affirm the decision on the trial court with respect to the convictions, but like the majority would remand the case for resentencing pursuant to State v. Foster.
 {¶ 151} I write separately for the sole purpose of addressing the issues raised by Arafat relative to the admission into evidence of the digital video images taken by the surveillance cameras capturing portions of the assault. All four assignments of error raised by Arafat reference some claimed error regarding the admission of these digital images. These claimed errors can be succinctly narrowed to the following two issues: (1) an objection that a "compressed" or "padded" digital video was provided to the jury, rather than the original digital video recordings, and (2) an objection to Detective Drake purportedly offering hearsay testimony about what was depicted in the digital video images played to the jury.
 {¶ 152} Initially, Arafat suggests Officer Drake's testimony should have been stricken because he "was neither present at the time the camera's [sic] were recording and was basing his testimony on conversations he carried on during his investigation with others who were not necessarily going to testify."
 {¶ 153} Arafat is confusing the legal bases for the admission of videotape evidence in this case. The traditional method, and apparently the method preferred by Arafat, is the "pictorial testimony theory," which involves the person who filmed the image, or a person who was present during filming, authenticating the images, or what the images depict, at trial. Under this theory, the photographic evidence is merely illustrative of a witness's testimony, and it becomes admissible only when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness's personal observation. See Midland Steel Products Co. v.Internatl. Union, United Auto., Aerospace AgriculturalImplement Workers of Am., Local 486 (1991), 61 Ohio St.3d 121,130, 573 N.E.2d 98. The "pictoral testimony theory," however, is but one method of establishing a basis for analog or digital video admissibility.
 {¶ 154} The majority correctly references a second approach, the "silent witness theory," as the proper basis for admissibility of digital video images captured by the surveillance cameras in this case. The digital video evidence offered here is a "silent witness," which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness. See Midland, supra.
 {¶ 155} The process, or system, used to capture these digital video images was testified to at trial by Norbert Friedrich, the individual who installed, monitored, and serviced the camera system. Although Friedrich was certified in video system installation, there is no requirement of expert testimony to admit analog or digital video images.[1] The Supreme Court of Ohio noted the following in Midland Steel:
"Under the silent witness theory, photographic evidence may be admitted upon a sufficient showing of the reliability of the process or system that produced the evidence. McCormick, Evidence (3 Ed. Cleary Ed. 1984) 672, Section 214. See United States v.Rembert, supra, at 1026. In support of this theory of admissibility, Midland Steel was not required to produce expert testimony regarding the reliability of its video surveillance system. United States v. Hobbs (C.A.6, 1968), 403 F.2d 977, 978. Rather, Midland Steel could show by lay testimony that the system was reliable. See, also, Evid.R. 201."
 {¶ 156} Arafat claims that, in their original form, the images were unviewable.[2] Generally speaking, in order to prove the contents of a photograph, the original photograph is required. Evid.R. 1002. A "photograph" for purposes of this rule includes, inter alia, videotapes. Evid.R. 1001(2).
 {¶ 157} Thus, under the Rules of Evidence, if the prosecution attempts to prove the contents of a videotape, the "best evidence rule" requires that the original tape be produced. State v.Churchill, Pickaway App. No. 01CA14, 2002-Ohio-1828. The Rules of Evidence however do not preclude the use of duplicates. The staff notes to Evid.R. 1002 note the following:
 {¶ 158} "As a practical matter, the `original' required by Rule 1002 as the best evidence would include a duplicate original or counterpart as defined by Rule 1001(3)[3] and in almost all instances a duplicate as defined by Rule 1001(4),[4]
and admissible as the best evidence pursuant to Rule 1003."[5]
 {¶ 159} Here, the original computer hard drive containing all the digital images was preserved and marked as State's exhibit 4. The relevant digital video images on the hard drive taken from cameras 1, 2, and 5 were then transferred to CDs[6] by Friedrich and marked as State's exhibits 5, 6, 7, and 9. The digital video images on these CDs were subsequently transferred by Detective Michael Klein, a detective with the neighboring Parma Police Department trained in forensic video analysis, into State's exhibit 11. State's exhibit 11 contained a compilation of digital images from the three cameras that could show the digital video with a "picture in picture" feature. These images contained a date/time record in the corner of each image. Thus, digital images taken from one or multiple cameras could appear in the video presentation as a whole. Klein also compiled State's exhibit 11(A), which was a compilation of individual digital images compiled from the overall digital video. These images were subsequently printed in hard copy and marked as State's exhibit 31.
 {¶ 160} Klein's work with these digital video images included a process called "padding," which made the images viewable for presentation to the jury by the state. Klein described "padding" as follows:
"Padding is a technique used when you have a surveillance video, which is typically time lapsed, say when they use a two hour tape to record 24 hours of video. When they play it back it goes really, really fast if you play it at its normal speed. The industry came up with this idea of, well, we'll stretch the picture out to make it look like it's lasting two seconds instead of point five seconds so the human eye when you're watching it, it appears to be close to normal speed."
 {¶ 161} There was no evidence offered indicating Klein altered these "stretched" images in a manner that made them unreliable. Nevertheless, the Rules of Evidence still required that these digital images be authenticated or identified prior to admission.
 {¶ 162} Evidence Rule 901 outlines the requirements:
 {¶ 163} "(A) General provision. — The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 {¶ 164} "(1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be. * * *
 {¶ 165} "(B) Illustrations. — By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
 {¶ 166} "* * * (9) Process or system. Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result."
 {¶ 167} Here, Klein testified about the software and equipment used to prepare the exhibits containing the digital video images used at trial. There was no indication or evidence offered that Klein had altered or tainted the images in a way that compromised their reliability. Klein's efforts were analogous to a traditional photo being enhanced or enlarged for easier viewing. Absent evidence that the system used to prepare the digital images for trial was unreliable, or that an alteration occurred that rendered the digital images false or misleading, they were properly admitted.
 {¶ 168} Further, the transfer of these digital images between multiple parties involved in the process raises questions about the chain of custody. The chain of custody is part of the authentication and identification mandate set forth in Evid.R. 901 for the admission of evidence. State v. Brown (1995),107 Ohio App.3d 194, 200, 668 N.E.2d 514. Although the prosecution bears the burden of establishing a proper chain of custody, that duty is not absolute. State v. Moore (1973),47 Ohio App.2d 181, 183, 353 N.E.2d 866. The state need not negate all possibilities of tampering or substitution; instead, the state need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur. Id.;Brown, 107 Ohio App.3d at 200, 668 N.E.2d 514. Any breaks in the chain of custody go to the weight afforded to the evidence, not to its admissibility. State v. Ice, Belmont App. No. 04 BE 8, 2005-Ohio-1330. Here, the state offered testimony covering each aspect of how the digital video was preserved, copied and assembled for viewing at trial, indicating that no tampering or improper alteration occurred. Further, the state preserved the images in their respective original form as the process was completed.
 {¶ 169} With respect to Arafat's claims that Detective Drake offered hearsay evidence while testifying about what was contained on the DVDs and CDs shown in open court, I, like the majority, reject such a view.
 {¶ 170} "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ohio R.Evid. 801(C).
 {¶ 171} Drake's testimony regarding the video images was not hearsay. Drake identified the individuals appearing in the video. This was based on his direct knowledge of what they were wearing at the time of the assault and his knowledge of their identities established at the time of their arrest and the search of the apartment. Further, Drake's characterization of what the individuals in the video were purportedly doing was subject to independent review by the trier of fact and cross-examination by defense counsel.
 {¶ 172} Lastly, no audio was contained on any of these digital videos played in open court. As such, Drake was testifying about his personal investigation or observations from the images displayed in court. The trier of fact was free to evaluate the images and Drake's testimony in any manner they deemed appropriate. The fact that Drake learned facts through the course of his investigation did not render those facts inadmissible hearsay.
 {¶ 173} For these reasons, I concur with the judgment and analysis of the majority in all respects on all the assigned errors and would affirm the decision of the trial court below on each assignment of error.
[1] There may very well be instances where expert testimony is required to resolve disputes over what constitutes an actual image, but absent a challenge on the basis that the image does not depict or portray what is purportedly claimed, no expert testimony is required.
[2] The record indicates that the inability to view the original digital image files from the computer hard drive was complicated by the fact the cameras recorded the images in "multiplex," a process where multiple cameras record images on one hard drive, CD or videotape. Further, because of limited storage, different portions of the hard drive were used to store images at different times. Lastly, the recordings were done at a faster speed than "real time" viewing. Nevertheless, these original digital images were preserved.
[3] Evidence Rule 1001(3) reads as follows: "Original. An `original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An `original' of photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an `original.'"
[4] Evidence Rule 1001(4) reads as follows: "Duplicate. A `duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduce the original."
[5] Evidence Rule 1003 reads: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."
[6] Although the parties refer to the discs created from the computer hard drive as CDs, the correct term for a digital video disc is DVD. The record indicates that State's exhibit 11(A) contained individual digital images, and as such, could be considered a CD.
 CONCURRING OPINION