[Cite as *State v. Armington*, 2019-Ohio-1713.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-A-0062** |
| DOUGLAS E. ARMINGTON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2018 CR 00045.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Samuel L. Altier*, 1027 Lake Avenue, Ashtabula, OH 44004 (For Defendant-Appellant).


MARY JANE TRAPP, J.

{¶1} Appellant, Douglas E. Armington, appeals the judgment of the Ashtabula County Court of Common Pleas, which accepted his plea of no contest and sentenced him for operating a vehicle while under the influence of alcohol ("OVI"), a felony of the fourth degree. After a review of the record and pertinent law, we affirm, finding his contention that the trial court committed prejudicial error by overruling his motion to suppress without merit.

**Substantive and Procedural History**

{¶2} In the early morning hours of December 3, 2017, Geneva Police Officer Shaun Gonzalez ("Officer Gonzalez") was on patrol when he noticed the vehicle in front of him weaving within the lane. The vehicle veered across a double yellow line surrounding the traffic markings that precede the left turn lane and made an erratic left turn. It continued weaving, alternating between driving on the fog and traffic lines. After observing the vehicle drive on the fog line on four separate occasions, he initiated his overhead lights and sirens to stop the vehicle.

{¶3} Appellant ("Mr. Armington"), the driver of the vehicle, did not have any identification, but he gave his social security number. Officer Gonzalez ran Mr. Armington's information through LEADS, his mobile data system, and discovered Mr. Armington was driving under a number of suspensions, including a habitual alcoholic suspension.

{¶4} Officer Gonzalez observed Mr. Armington's eyes were red and glassy, he had a thick tongue speech, "kind of slurred," was "fumbling for his wallet," and smelled of alcohol. Officer Gonzalez decided to administer field sobriety tests and conducted the horizontal gaze nystagmus, walk and turn, and one-legged stance tests. Mr. Armington failed all three.

{¶5} At that time, Officer Gonzalez believed Mr. Armington was impaired and placed him under arrest for OVI and driving under suspension. He administered a portable breathalyzer. Later testing at the station revealed a .158 BAC level.

{¶6} Mr. Armington was indicted on two counts of OVI, felonies of the fourth degree, this being his fourth OVI offense, in violation of R.C. 4511.19(A)(1)(a)(G)(1)(d),

2

and driving under OVI suspension, a misdemeanor of the first degree, in violation of R.C. 4510.14(A).

{¶7} Mr. Armington filed a motion to suppress, arguing he was subjected to a warrantless seizure without reasonable suspicion that a traffic law was violated. Further, he claimed any possible violations occurred outside the municipality of Geneva and Officer's Gonzalez's jurisdiction in violation of his Fourth and Fourteenth Amendment rights.

{¶8} At a hearing before the trial court, the state presented the testimony of Officer Gonzalez along with a dash cam video of the traffic stop.

### *The Location of the Traffic Stop*

{¶9} Officer Gonzalez testified his regular patrol route is to drive southbound on Rt. 534 to Clay Street. A portion of Rt. 534 (S. Broadway) and Clay Street are outside the Geneva city limits and fall within Harpersfield Township, Ashtabula County. Officer Gonzalez first observed Mr. Armington's vehicle while heading southbound on Rt. 534 near its intersection with Clay Street. The officer's attention was drawn to Mr. Armington's vehicle when it crossed into and drove on the diversion bubble at the beginning of the left turn bay at the intersection of Rt. 534 and Clay Street and then made a wide left turn onto the white fog line at the edge of the road. A diversion bubble is marked using two solid yellow lines to form both sides of the bubble at the beginning of the left turn bay or lane where the bubble separates traffic in opposite directions. There are yellow cross-hatch marking inside the bubble, as is the case at this intersection. Mr. Armington then continued driving eastbound for approximately a quarter of a mile in Harpersfield Township before reaching the Geneva city limits.

{¶10} While on Clay Street, Officer Gonzalez observed Mr. Armington's vehicle weave within its lane at least two to three more times, with at least one occasion occurring while in the city limits of Geneva. Officer Gonzalez initiated the stop within Geneva city limits.

### Motion to Suppress Denied

{¶11} The trial court denied Mr. Armington's motion to suppress, finding that "based on the testimony of Officer Gonzalez and the dash camera video footage presented that, although the initial observance of a traffic violation occurred outside of the City of Geneva, some of the observances of erratic driving occurred in the City of Geneva or immediately adjacent to the City of Geneva, and that the stop of Defendant did take place within the City of Geneva limits." Further, the court determined the stop itself was based on a reasonable, articulable suspicion of impaired driving, and the arrest was supported by probable cause.

{¶12} Mr. Armington subsequently pleaded no contest to one count of OVI, a felony of the fourth degree. The other two counts were dismissed via a plea agreement. The court sentenced him to a 24-month prison term of which 60 days were mandatory. He was also ordered to complete the mandatory alcohol/drug addiction treatment program; his driver's license was suspended for four years to run concurrent to any other suspensions; and a mandatory fine of $1,350 was imposed.

{¶13} Mr. Armington timely appeals, raising the following assignment of error:

{¶14} "The Trial Court committed prejudicial error by Overruling Defendant-Appellant Douglas E. Armington's Motion to Suppress."

### Motion to Suppress Standard

{¶15} "At a hearing on a motion to suppress, the trial court functions as the trier of fact, and, therefore, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of any witnesses." *State v. McGary,* 11th Dist. Trumbull No. 2006-T-0127, 2007-Ohio-4766, ¶20, citing *State v. Molek*, 11th Dist. Portage No. 2001-P-0147, 2002-Ohio-7159, ¶24, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992); *see also State v. Mustafa*, 11th Dist. Portage No. 2000-P-0116, 2001-Ohio-7067, 3-4. Thus, "'[a]n appellate court must accept the findings of fact of the trial court as long as those findings are supported by competent, credible evidence.'" *Id.,* citing *State v. Retherford*, 93 Ohio App.3d 586, 592 (2nd Dist.1994); *City of Ravenna v. Nethken*, 11th Dist. Portage No. 2001-P-0040, 2002-Ohio-3129, ¶13. "After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has [been] met." *Id.*

### Investigatory Stop

{¶16} "A stop is constitutional if it is supported by either a reasonable suspicion or probable cause." *Id.* at ¶22, quoting *Molek* at ¶25. "[T]he concept of an investigative stop allows a police officer to stop an individual for a short period if the officer has a reasonable suspicion that criminal activity has occurred or is about to occur." *Id.,* quoting *State v. McDonald*, 11th Dist. No. 91-T-4640, 1993 Ohio App. LEXIS 4152, 10, (Aug. 27, 1993), citing *State v. Klein*, 73 Ohio App.3d 486 (1991). "In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which would warrant a [person] of reasonable caution in the belief that the action taken was appropriate." *Id.*, quoting *Molek* at ¶25, citing *Klein* at 488, citing *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968).

5

**{¶17}** "As to the determination of whether an officer had a reasonable suspicion turns upon the specific facts of the case, the Supreme Court has consistently held that the propriety of such a stop 'must be viewed in light of the totality of the surrounding circumstances.'" *Id.*, quoting *Molek*, citing *State v. Bobo*, 37 Ohio St.3d 177 (1988), first paragraph of the syllabus.

### *Officer Gonzalez's Territorial Jurisdiction*

**{¶18}** In his first issue for review, Mr. Armington contends that the traffic stop, and subsequent arrest were constitutionally flawed because the observations made while on State Route 534 were made outside of Officer Gonzalez's jurisdiction and not on a highway immediately adjacent to Geneva's boundaries.

**{¶19}** While it is true that Officer Gonzalez testified he observed Mr. Armington turn erratically and weave outside the Geneva city limits, he also testified that he observed Mr. Armington driving erratically within the city limits. He also initiated the stop within the city limits as the following colloquy between Officer Gonzalez and the prosecutor demonstrates:

**{¶20}** "[Q.] Okay. The events you have testified to in regards to the stop of the vehicle, did they occur in the City of Geneva?

**{¶21}** "[A.] The initial marked lane was outside of the City of Geneva, as well as the initial turn from 534 onto Clay Street, but two of the infractions where he hit the white fog line or edge line, edge of roadway line, that was inside the City, as well as him almost striking, weaving, almost striking the marked lane. That was just past—that was inside our jurisdiction. That's when I initiated the traffic stop."

6

**{¶22}** Moreover, when Officer Gonzalez observed Mr. Armington driving outside of the city limits, he was adjacent to the city boundaries on both Rt. 534 and Clay Street.

**{¶23}** Pursuant to R.C. 2935.03(E)(3): "[a] police officer or village marshal appointed, elected, or employed by a municipal corporation may arrest and detain, until a warrant can be obtained, any person violating any section or chapter of the Revised Code listed in Division E(1) of this section on the portion of any street or highway *that is located immediately adjacent* to the boundaries of the municipal corporation in which the police officer or village marshal is appointed, elected, or employed." (Emphasis added.)

**{¶24}** The statute does not define the word "adjacent," thus we give the word its common, ordinary meaning. *State v. Welch*, 125 Ohio App.3d 49, 52 (11th Dist.1997), citing *State v. Hix*, 38 Ohio St.3d 129, 131 (1988). Merriam-Webster defines "adjacent" as "1a. not distant, b. having a common endpoint or border, c. immediately preceding or following * * *." https://www.merriam-webster.com/dictionary/adjacent (accessed March 17, 2019).

**{¶25}** The street map of the area demonstrates that both Rt. 534 and Clay Street run both in and out of the City of Geneva directly into the next jurisdiction, Harpersfield Township.

**{¶26}** Further, Mr. Armington's reliance on the Supreme Court of Ohio's recent decision in *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, is misplaced. In *Brown,* the officer admittedly arrested Mr. Brown outside her jurisdiction on an interstate highway after observing him cross the fog line for a distance of approximately 100 feet. *Id.* at ¶4. Critically, the record was silent as to whether the officer was aware Mr. Brown's license was suspended and that he had an active warrant in Michigan when she walked her drug

dog around the vehicle leading to the discovery of 120 oxycodone tablets and a baggie of marijuana. *Id.* at ¶5. The Sixth District Court of Appeals held that the stop was unreasonable and violated the Ohio Constitution because the marked lane violation occurred outside the officer's territorial jurisdiction and there were no extenuating circumstances that called for the township police officer to initiate the extraterritorial stop. *Id.* at ¶7. The Supreme Court of Ohio affirmed the judgment of the appellate court suppressing the evidence. In doing so, the court held "[a] traffic stop for a minor misdemeanor made outside a police officer's statutory jurisdiction or authority violates the guarantee against unreasonable searches and seizures established by Article I, Section 14 of the Ohio Constitution." *Id.* at ¶26.

{¶27} Further, *Brown* is a clarification of the Supreme Court of Ohio's holding in *State v. Weideman*, 94 Ohio St.3d 501 (2002). The officer in *Weideman* observed the appellant traveling "well left of center." The vehicle then "went off the right side of the road twice and again traveled left of center." *Id.* at 502. The question certified by the court of appeals was "[w]hether a stop and detention of a motorist by a police officer, who is *beyond* his or her jurisdictional limits, for an offense observed and committed *outside* the officer's jurisdiction automatically constitutes a *per se* unreasonable seizure under the Fourth Amendment * * * ." (Emphasis sic.) *Id.* at 504.

{¶28} The Supreme Court held that "[w]here a law enforcement officer, acting outside the officer's statutorily territorial jurisdiction, stops and detains a motorist for an offense committed and observed outside the officer's jurisdiction, the seizure of the motorist is not unreasonable *per se* under the Fourth Amendment." *Id.* at 506. Thus, looking at the totality of the circumstances surrounding the stop, the Supreme Court found

8

the government's interest in promoting public safety by stopping and detaining Wiedeman, who was driving erratically, outweighed the momentary restriction of her freedom. An officer violating a statute in order to detain a motorist may not rise to the level of a constitutional violation depending on the totality of the circumstances. *Id.* at 504.

{¶29} Unlike *Wiedeman* and *Brown,* Mr. Armington was stopped and arrested within the City of Geneva, Officer Gonzalez's jurisdiction. Moreover, all of Officer Gonzalez's observations leading up to the traffic stop and arrest occurred either within the city limits or on roads adjacent to the boundaries of Geneva. Although Officer Gonzalez was well within his jurisdiction, it bears noting that a law enforcement officer is not, nor should he or she be, limited to observing traffic violations only if they occur within his or her jurisdiction. Nor is the officer required to disregard those observations made while outside his or her jurisdiction when making the determination to stop a vehicle.

### *Reasonable Articulable Suspicion*

{¶30} In his second issue for review, Mr. Armington contends the traffic stop was not supported by a reasonable, articulable suspicion of criminal activity because he did not violate a traffic law. Specifically, he argues the fog line observations made while within the Geneva city limits are not violations of R.C. 4511.25 (lanes of travel upon roadways), and he contends that weaving within one's lane is not enough to trigger a traffic stop. We disagree.

{¶31} "In order for an investigative stop to fall within constitutional parameters, the police officer must be able to cite articulable facts that give rise to a reasonable suspicion that the individual is currently engaged in or is about to engage in criminal activity." *State*

*v. James*, 11th Dist. Portage 2009-P-0082, 2010-Ohio-4556, ¶16, quoting *State v.* Gray, 11th Dist. Geauga No. 99-G-2249, 2000 Ohio App. LEXIS 3197, 21 (July 14, 2000), citing *Terry* at 6.

{¶32} We, and other courts, have held in similar cases that weaving within one's lane is enough to initiate a traffic stop depending on the totality of the circumstances. Thus, in *State v. Gedeon*, 81 Ohio App.3d 617 (11th Dist.1992), we held that "weaving within one's lane alone presents a sufficient scenario for an officer to conduct an investigative stop." *Id.* at 619; citing*, Columbus v. Quinn*, 10th Dist. Franklin No. 86AP-1079 (Dec. 17, 1987) (where the court found that an officer observing a driver varying his speed between 35 m.p.h. and 45 m.p.h. and weaving within the same lane are sufficient to stop the driver and investigate); *State v. Hilleary*, 2d Dist. Miami No. 88-CA-5, 5 (May 24, 1989) (when an officer observes a car weaving within its lane in an area where an extremely high number of DUI arrests were made, the officer had a reasonable suspicion to stop the driver and investigate); *Montpelier v. Lyon*, 6th Dist. Williams No. WMS-86-16. 2 (May 1, 1987) (weaving within one's traffic lane during the early morning hours is sufficient to justify an investigative stop. The court elaborated: "[w]eaving, whether within or outside one's lane, is indicative of erratic driving which authorizes the police to stop a vehicle.").

{¶33} In *State v. Messick*, 5th Dist. Delaware No. 06CAC090065, 2007-Ohio-1824, the Fifth District Court of Appeals found, under similar circumstances, "[a]lthough the weaving could be classified as de minimis, that coupled with the officer's earlier observation of appellee's erratic left turn from the right hand lane gave the officer a reasonable and articulable suspicion to justify the stop of appellee. The State does not

10

have to charge a motorist with a traffic violation in order to use the facts of such a violation to support a reasonable suspicion to initiate a traffic stop." *Id.* ¶15.

**{¶34}** Moreover, while weaving within one's lane does not carry any criminal penalties, it is still a traffic violation pursuant to Geneva Codified Ordinances 432.38(a), "Weaving; Full time and Attention." In relevant part, this ordinance provides: "[n]o person shall operate a motor vehicle or motorcycle upon any street or highway in a weaving or zigzag course unless such irregular course is necessary for safe operation or in compliance with law." *Id.*

**{¶35}** Mr. Armington also argues he committed no other traffic violations. We disagree. When he crossed the double yellow line that surrounds the diversion bubble appearing on the pavement at the beginning of the left turn lane, Mr. Armington violated the rules for driving within marked lanes, R.C. 4511.33. Violations of traffic laws not only give rise to a reasonable suspicion that a crime is or about to occur, but can form probable cause for a traffic stop. "A traffic stop is reasonable when an officer possesses probable cause to believe an individual committed a traffic violation." *State v. Davis*, 11th Dist. Portage No. 2005-P-0077, 2006-Ohio-3424, ¶23, citing *Whren v. United States*, 517 U.S. 806, 809 (1996).

**{¶36}** In *Davis*, an officer observed four traffic violations, including a violation of R.C. 4511.36(A)(3), for turning into the curb lane instead of the left lane on his first turn, and then, on his second, crossing across both lanes of traffic into a driveway. *Id.* at ¶4. We found these traffic violations not only supported a finding of reasonable suspicion but, under those circumstances, also a finding of probable cause. *Id.* at ¶22. "Probable cause is a higher standard than that of reasonable suspicion. *Id.* at ¶23, citing *State v. Smith*,

11

117 Ohio App.3d 278, 282 (1st Dist.1996). An officer has probable cause to stop a vehicle where he observes conduct which he reasonably believes violates the law." *Id.*, citing *State v. Lawless*, 11th Dist. Portage No. 98-P-0048, 1999 WL 454627, 9 (June 25, 1999), citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964). "An officer is not required to possess proof of a violation so long as the officer reasonably believes the conduct observed constitutes a form of the offense in question." *Id.*, citing *State v. Williams,* 2d Dist. Montgomery No. 16306, 1997 WL 822672, (Nov.21, 1997).

{¶37} "In evaluating the propriety of an investigative stop, the reviewing court must examine the totality of the circumstances surrounding the stop as 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *James* at ¶18, citing *Gray* at 8, quoting *State v. Shacklock*, 11th Dist. Trumbull Nos. 98-T-0005 & 98-T-0083, 1999 WL 266620, 4 (Apr. 30, 1999), quoting *State v. Andrews* (1991), 57 Ohio St. 86, 87-88 (1991). "The court reviewing the officer's actions must give due weight to the officer's experience and training, and view the evidence as it would be understood by those in law enforcement." *Id.,* citing *Shacklock* at 4, citing *Andrews* at 88, citing *United States v. Cortez,* 449 U.S. 411, fn. 2 (1981).

{¶38} Under the totality of the circumstances, Officer Gonzalez, an experienced and trained officer with over 50 OVI stops resulting in citations, had a reasonable and articulable suspicion to initiate a stop within his jurisdiction when he observed, during the early morning hours, a vehicle driving across a double yellow line that surrounds the diversion bubble appearing on the pavement at the beginning of the left turn lane then making an erratic turn while the motorist was outside his jurisdiction. Then, as the officer drove within his jurisdiction, he observed the motorist repeatedly driving onto the fog line

12

and weaving within its lane.  Officer Gonzalez also established probable cause to arrest Mr. Armington for an OVI after observing multiple signs of intoxication—red and glassy eyes, thick tongue and slurred speech, fumbling for his wallet, and the smell of alcohol, followed by the failure of all three administered field sobriety tests.

{¶39}  Mr. Armington's sole assignment of error is without merit.

{¶40}  The judgment of the Ashtabula County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.