[Cite as *State v. Grant*, 2025-Ohio-5095.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-T-0095 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| DONTEILL M. GRANT, | |
| Defendant-Appellant. | Trial Court No. 2023 CR 00608 |

## OPINION AND JUDGMENT ENTRY

Decided: November 10, 2025
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Charles L. Morrow*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Michael A. Partlow*, P.O. Box 1562, 3435 Kent Road, Stow, OH 44224 (For Defendant-Appellant).

ROBERT J. PATTON, P.J.

{¶1} Appellant, Donteill M. Grant ("Grant"), appeals from the judgments of the Trumbull County Court of Common Pleas denying his motion to suppress, and convicting him of trafficking and possessing cocaine. For the following reasons, we affirm.

{¶2} This case arises from a traffic stop that occurred on July 11, 2023, in Brookfield Township that resulted in the discovery of almost 500 grams of cocaine. Grant filed a motion to suppress the evidence officers seized upon Grant's arrest contending that the officer had no reasonable suspicion or probable cause to initiate a traffic stop. The trial court denied Grant's motion, and he was ultimately convicted of trafficking in

cocaine and possession of cocaine. On appeal, Grant asserts that the trial court erred by not granting his motion to suppress, maintaining that no reasonable suspicion or probable cause existed to initiate the traffic stop. Grant contends that the trial court erred when it admitted a composite video created from Officer Jonathan Setser's body cam and dash cam video. Grant further asserts that his conviction was against the manifest weight of the evidence, arguing breaks in the chain of custody and the lawfulness of the search. After reviewing the record and pertinent law, we conclude there was reasonable suspicion to initiate the stop of Grant's vehicle and the trial court properly denied his motion to suppress. Additionally, we conclude that the trial court did not err in admitting the composite video into evidence, and that Grant's conviction was not against the manifest weight of the evidence.

**Substantive and Procedural History**

{¶3}    On July 11, 2023, as Grant was traveling in a vehicle on US 62 headed west in Brookfield Township and away from Sharon, Pennsylvania, he was stopped. Officer Jonathan Setser ("Officer Setser") first noticed that Grant's license plate was crooked, and it appeared to the officer that the license plate was not securely fastened. Officer Stetser knew from his training that this could indicate a stolen vehicle. When the officer ran the license plate number it came back as a rental vehicle. Officer Setser then observed the vehicle cross over the fog line. Shortly thereafter, he initiated a stop of Grant's vehicle. Once stopped, Officer Setser approached Grant from the passenger side. Upon closer inspection, Officer Setser could see that the license plate was secured by two bolts. He then explained to Grant the issue with the license plate and returned to his vehicle to run Grant's driver's license. When Officer Setser returned to Grant's vehicle,

he asked him about the smell of marijuana in the car. Grant admitted to the officer that there was a blunt in the vehicle, showed him the blunt, and the officer could see that there was also a baggie of what looked like marijuana in the console. Officer Setser seized the marijuana and asked Grant to step out of the car. When backup arrived, just as Officer Setser was preparing to search Grant's vehicle, Grant fled on foot. Once officers were able to stop Grant and detain him, Officer Setser conducted a search of Grant's person. The search revealed a baggie containing what was later determined to be nearly 500 grams of cocaine from Grant's cargo pants.

{¶4} Grant was arrested and later indicted on: Count 1, trafficking in cocaine with specification of forfeiture and Count 2, possession of cocaine with specification of forfeiture, both felonies of the first degree. Grant initially pled guilty to an amended indictment of Count 1, and the State agreed to file a nolle prosequi on Count 2. Grant later withdrew his plea, and the case proceeded to trial on October 21, 2024. The jury found Grant guilty of both Counts 1 and 2. The trial court merged the counts for the purposes of sentencing and the State elected to proceed on Count 2. Grant was sentenced to a mandatory prison term of an indefinite term of 11 years to a maximum of 16 and a half years, to submit to DNA testing, and a fine of $10,000, plus costs.

**Grant's Assignments of Error**

{¶5} On appeal, Grant asserts three assignments of error:

{¶6} "[1.] The trial court erred in denying appellant's motion to suppress of [sic] all evidence against him, in violation of this rights [sic] pursuant to the Fourth Amendment to the United States Constitution."

Case No. 2024-T-0095

{¶7} "[2.] The trial court erred and abused its discretion by admitting State's Exhibit 8, the so called composite video in violation of appellant's constitutional right to confront witnesses."

{¶8} "[3.] Appellant's conviction is against the manifest weight of the evidence."

**Motion to Suppress**

{¶9} Review of a motion to suppress presents mixed questions of law and fact. *State v. Holley*, 2024-Ohio-6006, ¶ 11 (11th Dist.), quoting *State v. Wright*, 2015-Ohio-2600, ¶ 37 (11th Dist.), quoting *State v. Burnside*, 2003-Ohio-5372, ¶ 8. As such, an appellate court is required to accept the trial court's factual findings where supported by competent credible evidence and to apply the correct legal standard to the facts de novo. *Id.*, citing *Wright* at ¶ 37, quoting *State v. Holnapy*, 2011-Ohio-2995, ¶ 28 (11 Dist.). "At a hearing on a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses." *State v. Grady*, 2025-Ohio-2734, ¶ 23, (11th Dist.), citing *Burnside* at ¶ 8; *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). "As a result, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8.[1]

{¶10} An officer must be able to cite articulable facts to constitute reasonable suspicion to conduct an investigative stop. "'In order for an investigative stop to fall within constitutional parameters, the police officer must be able to cite articulable facts that give rise to a reasonable suspicion that the individual is currently engaged in or is about to

---

1. At oral argument, counsel for Grant suggests that the reviewing court should undertake a manifest weight approach and weigh the evidence presented at trial. Ohio law, however, requires that appellate courts accept the trial court's findings of fact unless unsupported by the record.

Case No. 2024-T-0095

engage in criminal activity.'" *State v. Armington*, 2019-Ohio-1713, ¶ 31 (11th Dist.), quoting *State v. James*, 2010-Ohio-4556, ¶ 16 (11th Dist.), quoting *State v. Gray*, 2000 WL 973411, 2 (11th Dist. July 14, 2000), citing *Terry v. Ohio*, 392 U.S. 1, 6 (1968). Probable cause, however, is a higher standard than reasonable articulable suspicion. "Violations of traffic laws not only give rise to a reasonable suspicion that a crime is or about to occur, but can form probable cause for a traffic stop. 'A traffic stop is reasonable when an officer possesses probable cause to believe an individual committed a traffic violation.'" *Armington* at ¶ 35. Here, it must be demonstrated that there was at least reasonable suspicion to stop Grant, and probable cause would surpass that minimum threshold.

{¶11} When stopping a vehicle, the State is not required to charge a violation for the facts to remain sufficient to support reasonable suspicion. "'The State does not have to charge a motorist with a traffic violation in order to use the facts of such violation to support a reasonable suspicion to initiate a traffic stop.'" *Armington* at ¶ 33, citing *State v. Messick*, 2007-Ohio-1824, ¶ 15 (5th Dist.). Further, "[a]n officer has probable cause to stop a vehicle where he observes conduct which he reasonably believes violates the law." *Armington* at ¶ 36, citing *State v. Davis*, 2006-Ohio-3424, ¶ 23 (11th Dist.), citing *State v. Lawless*, 1999 WL 454627 (11th Dist. June 25, 1999). "An officer is not required to possess proof of a violation so long as the officer reasonably believes the conduct observed constitutes a form of the offense in question." *Id.*, quoting *Davis* at ¶ 23, citing *State v. Williams*, 1997 WL 822672 (2d Dist. Nov. 21, 1997). In other words, where an officer reasonably believes a traffic violation occurred, probable cause exists to stop the vehicle.

Case No. 2024-T-0095

{¶12} A reviewing court must examine the totality of the circumstances when determining if reasonable articulable suspicion exists for an investigative stop. "'In evaluating the propriety of an investigative stop, the reviewing court must examine the totality of the circumstances surrounding the stop as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold."'" *Armington* at ¶ 37, quoting *State v. James*, 2010-Ohio-4556, ¶ 18 (11th Dist.). Accordingly, we will review the totality of the circumstances that led up to Officer Setser's stop of Grant's vehicle.

{¶13} Here, Officer Setser testified that he observed that Grant's license plate was crooked and that it looked as if it was only held on by one screw. Officer Setser was driving in the left lane, while Grant was driving in the right lane, when the officer made the observation. When the officer ran Grant's plate, it came back as a rental. Officer Setser's training informed him that this could indicate a stolen vehicle. At this point, the officer would have had reasonable articulable suspicion to initiate a stop. Officer Setser then observed Grant crossing the fog line, a clear and objective traffic violation, as Grant was driving westbound into Brookfield Township from the direction of Pennsylvania. Therefore, Officer Setser had probable cause to stop the vehicle.

{¶14} There is dispute as to whether Grant crossed the fog line. Both the State and Grant cite to *State v. Turner*, 2020-Ohio-6773, ¶ 37, which requires that the driver actually cross the fog line to constitute a traffic violation, not to simply touch or drive into the line. The trial court determined that Grant crossed the fog line. Therefore, applying the law to the facts, de novo, we conclude that the trial court did not abuse its discretion by denying Grant's motion to suppress the evidence seized as a result of the traffic stop.

Case No. 2024-T-0095

Officer Setser had probable cause, a standard higher than reasonable articulable suspicion, to initiate the traffic stop as he observed Grant commit a traffic violation.

{¶15} Accordingly, Grant's first assignment of error is without merit.

**Admission of Composite Evidence**

{¶16} Grant contends, in his second assignment of error, that the trial court erred by admitting what the State termed as a "composite" video consisting of the audio from Officer Setser's body cam video, and the imagery from Officer Seter's dash cam video, merged to create imagery with accompanying sound. Both pieces of evidence were admitted into evidence separately without objection.

{¶17} It is within the trial court's discretion to admit or exclude evidence. "A determination as to the admissibility or exclusion of evidence is a matter within the sound discretion of the trial court." *Ambrose v. USAA Gen. Indemn. Co.*, 11th Dist. Portage No. 2021-P-0108, 2022-Ohio-2629, ¶ 123.

> Indeed, "'[t]he issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury.'" *Id.*, quoting *Columbus v. Taylor*, 39 Ohio 3d 163, 164, 529 N.E.2d 1382(1988). Consequently, a reviewing court will not reverse a lower court's determination as to the admissibility of evidence absent an abuse of discretion. *Id.* Where the decision to admit evidence is purely a legal one since it involves a question of law, our standard of review is de novo. *Id.*

*State v. Nixon*, 2023-Ohio-4871, ¶ 146 (11th Dist.). Therefore, we will not reverse the trial court's decision to admit or exclude evidence absent an abuse of discretion.

{¶18} There is a low threshold to admit video evidence. Evid.R. 901(A) states that: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in

Case No. 2024-T-0095

question is what its proponent claims." """This low threshold standard does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that the document is what its proponent claims to be.""" *State v. Glavic*, 2024-Ohio-209, ¶ 47 (11th Dist.), quoting *State v. Miller*, 2015-Ohio-956, ¶ 21 (11th Dist.), quoting *State v. Easter*, 75 Ohio App.3d 22, 25 (4th Dist. 1991). "Evid.R. 901(B)(1) provides, by way of illustration, that testimony from a witness with knowledge that a matter is what it is claimed to be is sufficient to authenticate evidence. The proponent of the evidence need only demonstrate a 'reasonable likelihood' that the evidence is authentic." *Id.* at ¶ 48, quoting *State v. Jasiewicz*, 2013-Ohio-4552, ¶ 14 (11th Dist.), citing *State v. Bell*, 2009-Ohio-2335, ¶ 30 (12th Dist.). Here, the State was merely required to demonstrate the reasonable likelihood that the video contents of the composite video were authentic.

{¶19} Video evidence can be admitted under two theories: the pictorial-testimony theory, or the silent-witness theory. "Under the pictorial-testimony theory, evidence is admissible 'when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on the witness' personal observation.'" *State v. Rosemond*, 2019-Ohio-5356, ¶ 58 (1st Dist.), quoting *Midland Steel Prod.* 61 Ohio St.3d 121, 129-130 (1991); *State v. Hoffmeyer*, 2014-Ohio-3578, ¶ 19 (9th Dist.). By personal observation, the witness must testify that the evidence is "merely illustrative of a witness' testimony and it only becomes admissible when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness' personal observation." *State v. Pickens*, 2014-Ohio-5445, ¶ 150, citing *Midland Steel Prods. Co.* at 129-130. "Under the silent-witness theory, photographic evidence is

Case No. 2024-T-0095

a 'silent witness,' which 'speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness.*" Rosemond at ¶ 58. "Under that theory, evidence is admissible 'upon a sufficient showing of the reliability of the process or system that produced the evidence.'" *Id.* "'The "[silent-witness]" theory is applicable when the photographic evidence speaks for itself and is substantive evidence of what it portrays.'" *State v. Ice*, 2005-Ohio-1330, ¶ 20, quoting *Midland Steel Prod.* at 130. Expert witness testimony, however, is not required to demonstrate reliability." *Id.* Here, the State simply needed to demonstrate through Officer Setser's testimony that the contents of the composite video were an accurate representation of what he observed and participated in on the day of the traffic stop.

{¶20} At trial, Grant's defense counsel objected to the admissibility of the State's composite video ("State's Exhibit 8") based on a lack of foundation. On appeal, Grant argues that the trial court erred by admitting the composite video in violation of Grant's constitutional right to confront witnesses. The dash cam and body cam were admitted into evidence separately, as State's Exhibits 6 and 7, without objection. The State explained it created the video "mesh", and Officer Setser testified that he had viewed both the dash cam video and the body cam video as well as State's Exhibit 8, the composite video. Defense counsel stated its reason for the objection to State's Exhibit 8 was for "the lack of personal knowledge of the officer in the creation of the video." However, that was not the standard the State was required to meet. Officer Setser's testimony alone was sufficient to meet the low threshold required to establish that the composite video, State's Exhibit 8, was what it was purported to be, under the pictorial-testimony theory. Officer Setser, who had personal knowledge of the interaction with Grant, and was pictured in

the video, testified that the compilation video was a true and accurate depiction of the events that occurred. *See Pickens*, 2014-Ohio-5445, at ¶ 149-154, *overruled on other grounds*, (spliced video was admissible and any problems with the quality go to the weight of the evidence, not admissibility); *see also State v. Dobson*, 2025-Ohio-2148, ¶ 32-33 (8th Dist.) (stitched together videos were created from components admitted into evidence and not challenged, after proper authentication through the silent-witness theory).

{¶21} Accordingly, the composite video was properly authenticated, and the trial court did not abuse its discretion by admitting the video. Grant's second assignment of error is without merit.

## Manifest Weight

{¶22} In his final assignment of error, Grant asserts that his conviction was against the manifest weight of the evidence. "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 1997-Ohio-52, ¶ 24. An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as the 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at ¶ 25,

quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Accordingly, we review the record to determine if the jury clearly lost its way.

{¶23} Grant raises issues with the lawfulness of the search resulting in evidence used to convict Grant, as well as chain of custody of that evidence. Our review of the record revealed that Officer Setser had probable cause to stop Grant as the officer observed Grant commit a traffic violation. *Armington*, 2019-Ohio-1713, at ¶ 35 (11th Dist.). Once the officer stopped Grant, he could smell marijuana emanating from the vehicle. *See State v. Walker*, 2012-Ohio-3303, ¶ 32 (11th Dist.) (the smell of marijuana alone by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle). Further, the officer questioned Grant about the odor, and Grant volunteered that he had a blunt in the vehicle. Officer Setser could see a baggie of marijuana that Grant had not disclosed. The officer then proceeded to conduct a search of the vehicle, and prior to the search, Grant fled on foot. The officers chased Grant across the highway, were able to handcuff him, and then conducted a search of his person. *See State v. Johnson*, 2017-Ohio-5527, ¶ 33 (10th Dist.) (fleeing a lawful traffic stop is probable cause for arrest; search incident to arrest is an exception to the warrant requirement). As a result of the search of Grant's person, nearly 500 grams of cocaine were discovered.

{¶24} Grant further contends that there was a break in the chain of custody which should be considered in our manifest weight analysis. "Chain of custody is part of the authentication and identification mandate set forth in Evid.R. 901, and the state has the burden of establishing the chain of custody of a specific piece of evidence." *State v. Brown*, 107 Ohio App.3d 194, 200 (3d Dist. 1995), citing *State v. Barzacchini*, 96 Ohio

App.3d 440, 457-458 (6th Dist. 1994). "The state's burden, however, is not absolute since '[t]he state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur.'" *Id.*, citing *State v. Blevins*, 36 Ohio App.3d 147, 150 (10th Dist. 1987). "Thus, even if a chain of custody is broken, it goes to the weight afforded the evidence, not its admissibility." *Id.* Here, Grant's defense counsel objected to the admission of the cocaine evidence and asserts that the chain does not include any record of going to the Bureau of Criminal Investigation ("BCI") for testing. Officer Setser testified to the chain of custody at trial, and the record indicates no mention was made of the evidence going to BCI. However, Erin Miller ("Miller"), employed with BCI, testified that she conducted the cocaine testing. Miller stated that she recognized the bag containing the narcotics, she identified her initials on the bag from opening the seal to conduct her analysis and testified to the amount the narcotics weighed. Miller further said how she received the narcotics for analysis, the process of her analysis, and her process of resealing the bag after she is finished and returning the bag to the narcotics vault.

{¶25} Based on the record, it cannot be said that the jury clearly lost its way and that Grant's conviction was against the manifest weight of the evidence. Accordingly, Grant's third assignment of error is without merit.

{¶26} For the foregoing reasons, we affirm the judgments of the Trumbull County Court of Common Pleas.

MATT LYNCH, J.,

SCOTT LYNCH, J.,

concur.

Case No. 2024-T-0095

## JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgments of the Trumbull County Court of Common Pleas are affirmed.

Costs to be taxed against appellant.

_____
PRESIDING JUDGE ROBERT J. PATTON

_____
JUDGE MATT LYNCH,
concurs

_____
JUDGE SCOTT LYNCH,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2024-T-0095